**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA, *ex rel.*
ALEX GRABCHESKI,

                Plaintiff,

      v.

AMERICAN INTERNATIONAL GROUP,
INC.,

                Defendant.

Case No.:  10-cv-3902 (GBD)

---

**REPLY IN FURTHER SUPPORT OF AIG'S MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT</u>**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Michael B. Carlinsky
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
michaelcarlinsky@quinnemanuel.com

William A. Burck
Lori Alvino McGill
777 6th Street NW, 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
williamburck@quinnemanuel.com
lorialvinomcgill@quinnemanuel.com

*Attorneys for Defendant American
International Group, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................2

I.  THE PUBLIC DISCLOSURE BAR COMPELS DISMISSAL OF THIS
CASE, AS UNDERSCORED BY THE "NEW ALLEGATIONS" IN
PLAINTIFF'S PROPOSED THIRD AMENDED COMPLAINT ...............................2

    A.  The Public Disclosure Bar Forecloses Plaintiff's Claims .................................3

    B.  The Third Amended Complaint Compounds The Public Disclosure
Problems .........................................................................................................5

    C.  Plaintiff Has Effectively Conceded That He Is Not An "Original
Source" ...........................................................................................................6

II.  THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR LEAVE TO
FILE A THIRD AMENDED COMPLAINT ............................................................9

    A.  Plaintiff Has Repeatedly Failed To State A Viable Claim Against AIG,
And He Offers No Persuasive Reason Why He Should Be Given A
Fourth Bite At The Apple ................................................................................9

    B.  Plaintiff's Proposed Third Amended Complaint Still Fails To State A
Claim Under The False Claims Act ...............................................................11

        1.  Much Of Plaintiff's New "Allegations" In The Third Amended
Complaint Are Improper And Should Be Stricken ..............................12

        2.  The Third Amended Complaint Still Fails To Plead A False
Statement With Particularity, As Required By Rule 9(b) ....................13

        3.  The Third Amended Complaint Still Fails To Plead That AIG
Acted Knowingly ...............................................................................15

            (a)  Plaintiff fails to provide a plausible factual basis for the
new allegations concerning individuals that allegedly
"knew about" the alleged violations of law. ..............................15

            (b)  There is no "knowingly false statement" alleged because
Plaintiff does not and cannot allege that the law was
objectively clear in prohibiting ALICO's conduct and
that AIG knew that ALICO's activities violated the law. ........18

**4.      The Third Amended Complaint Fails To Allege That The Purported Misrepresentations Were Material.......................................24**

**CONCLUSION ...................................................................................................................25**

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................15, 19, 21

*Castenson v. City of Harcourt,*
  86 F. Supp. 2d 866 (N.D. Iowa 2000).............................................22

*Collier v. Boymelgreen Developers,*
  2008 WL 835706 (E.D.N.Y. Mar. 28, 2008)...................................13

*Cook Cnty. v. U.S. ex rel. Chandler,*
  538 U.S. 119 (2003)...........................................................................25

*Dreick Finanz AG v. Sun,*
  1990 WL 11537 (S.D.N.Y. Feb. 9, 1990).........................................18

*Footbridge Ltd. v. Countrywide Home Loans, Inc.,*
  2010 WL 3790810 (S.D.N.Y. Sept. 28, 2010).................................13

*Kirk v. Heppt,*
  423 F. Supp. 2d 147 (S.D.N.Y. 2006)................................................9

*Lucente v. Int'l Bus. Mach. Corp.,*
  310 F.3d 243 (2d Cir. 2002).................................................................9

*Luckey v. Baxter Healthcare Corp.,*
  183 F.3d 730 (7th Cir. 1999)............................................................22

*Major League Baseball Props. Inc. v. Opening Day Prods., Inc.,*
  1997 WL 525482 (S.D.N.Y. Aug. 22, 1997)...................................13

*McElmurray v. Consol. Gov. of Augusta-Richmond Cnty.,*
  501 F.3d 1244 (11th Cir. 2007)..........................................................6

*In re Merrill Lynch & Co. Research Reports Secs. Litig.,*
  218 F.R.D. 76 (S.D.N.Y. 2003).........................................................13

*Oneida Indian Nation of N.Y. v. City of Sherrill,*
  337 F.3d 139 (2d Cir. 2003).................................................................9

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.,*
  966 F. Supp. 2d 282 (S.D.N.Y. 2013).....................................6, 11, 14

*In re Platinum & Palladium Commodities Litig.,*
  828 F. Supp. 2d 588 (S.D.N.Y. 2011)..............................................13

*Rockwell Int'l Corp. v. U.S.,*
  549 U.S. 457 (2007) ............................................................................9

*Thulin v. Shopko Stores Operating Co.*,
   2013 WL 5946503 (W.D. Wisc. Nov. 5, 2013)................................................................23

*U.S. ex rel. Bahrani v. Conagra, Inc.*,
   465 F.3d 1189 (10th Cir. 2006)......................................................................................24

*U.S. ex rel. Blundell v. Dialysis Clinic*,
   2011 WL 167246 (N.D.N.Y. Jan. 19, 2011)....................................................................7

*U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*,
   785 F. Supp. 2d 303 (S.D.N.Y. 2011), *aff'd*, 531 F. App'x 118 (2d Cir. 2013)..............23

*U.S. ex rel. Findley v. FPC-Boron Empls.' Club*,
   105 F.3d 675 (D.C. Cir. 1987)..........................................................................................3

*U.S. ex rel. Hixon v. Health Mgmt. Sys. Inc.*,
   613 F.3d 1186 (8th Cir. 2010) ......................................................................................22

*U.S. ex rel. Lamers v. City of Green Bay*,
   168 F.3d 1013 (7th Cir. 1999) ......................................................................................22

*U.S. ex. rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*,
   690 F.3d 951 (8th Cir. 2012) ........................................................................................22

*U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*,
   14 F.3d 645 (D.C. Cir. 1994)...........................................................................................4

*U.S. ex rel. Streck v. Allergan, Inc.*,
   894 F. Supp. 2d 584 (E.D. Pa. 2012) .............................................................................23

*U.S. ex rel. Taylor v. Gabelli*,
   345 F. Supp. 2d 313 (S.D.N.Y. 2004).............................................................................22

*U.S. ex rel. Williams v. Renal Care Grp., Inc.*,
   696 F.3d 518 (6th Cir. 2012) ........................................................................................23

*U.S. v. Mallas*,
   762 F.2d 361 (4th Cir. 1985) ........................................................................................22

*U.S. v. Pirro*,
   212 F.3d 86 (2d Cir. 2000)............................................................................................22

*U.S. v. Sci. Applications Int'l Corp.*,
   626 F.3d 1257 (D.C. Cir. 2010).....................................................................................18

*U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*,
   38 F. Supp. 3d 398 (S.D.N.Y. 2014)..............................................................................14

*U.S. ex rel. Gagne v. City of Worcester*,
   565 F.3d 40 (1st Cir. 2009).................................................................................9, 10, 11

*U.S. ex rel. Schubert v. All Children's Health Sys., Inc.*
   941 F. Supp. 2d 1332 (M.D. Fla. 2013) ...........................................................................7

*Wood ex rel. U.S. v. Applied Research Assocs., Inc.*,
    328 F. App'x 744, 747 (2d Cir. 2009) ...................................................................14

## **Statutes**

31 U.S.C. § 3729 ..............................................................................................................24

31 U.S.C. § 3730 .......................................................................................................2, 6, 9

Fed. R. Civ. P. 9 .....................................................................................................1, 13, 14

Fed. R. Civ. P. 12 ...................................................................................................1, 12, 13

N.Y. Ins. Law § 1101 ................................................................................................18, 19

1993 N.Y. Sess. Laws ch. 663 (McKinney) ...................................................................20

N.Y. Bill Jacket, 1970 A. 3786, ch. 295 (Gov.'s Mem.) ...............................................20

Ins. Law Revision of the State of N.Y. (Tentative Draft) § 50.3 (1937) ......................20

Defendant American International Group, Inc. ("AIG") respectfully submits this combined memorandum of law in (i) further support of its motion to dismiss with prejudice the Second Amended Complaint of Plaintiff Alex Grabcheski ("Plaintiff" or "Relator") and (ii) opposition to Plaintiff's motion for leave to file a Third Amended Complaint.

## PRELIMINARY STATEMENT

AIG's motion to dismiss established that the Second Amended Complaint falls short of both Federal Rule of Civil Procedure 9(b)'s heightened pleading standard and Rule 12(b)(6)'s plausibility standard. Mot. at 9–17, Dkt. No. 30. Plaintiff half-heartedly asserts that he "disagree[s] with AIG's argument that the Second Amended Complaint fails to state a claim," Opp. at 7, Dkt. No. 41, but he does not even attempt to argue the point. Instead, he seeks to sidestep AIG's motion entirely by offering to cure the deficiencies with yet another amended complaint.

To the extent Plaintiff *does* defend the Second Amended Complaint, he advances a novel and unsupported theory of the public disclosure bar. Under Plaintiff's exceedingly narrow view, the public disclosure bar is no impediment to a False Claims Act lawsuit unless the defendant has issued a press release affirmatively declaring that it had defrauded the federal government. That is not the law. The public disclosures identified in AIG's motion put the public on notice of the conduct of which Plaintiff complains and require dismissal of this case. The proposed Third Amended Complaint fares even worse on this point, as it adopts wholesale factual allegations and legal conclusions that indisputably are lifted from public disclosures made in the course of litigation between state regulators and AIG and MetLife, about the very same conduct of which Plaintiff complains. Moreover, Plaintiff has presented no argument whatsoever to suggest he is the original source of these disclosures, relying instead on his strained and unsupported conception of "public disclosure" as a shield to hide the fact that he could not possibly qualify as

an original source.  As a result, this case can survive only if the Court adopts Plaintiff's vanishingly narrow definition of "public disclosure."

The Third Amended Complaint is equally ineffective in curing the other pleading defects identified in AIG's motion to dismiss.  Plaintiff claims to have added "more than 20 pages' worth … of factual details" that were omitted from the Second Amended Complaint.  Opp. at 6. But the overwhelming majority of that material was lifted directly from pleadings and administrative orders that are in the public record, and he *still* fails to identify the "who, what, when, where, and how" of any transaction that allegedly violated the litany of state laws he cites.

The maxim that "leave to amend should be freely granted" does not require the Court to condone Plaintiff's staggeringly haphazard approach to this litigation.  Nor does the False Claims Act supply a vehicle for disaffected former employees to bog down their former employers in protracted and meritless litigation.  The statute's aim is to ensure the United States government is not shortchanged.  Plaintiff has had three opportunities to plead his case against AIG.  He has failed, and he has provided no persuasive reason why he should have a fourth opportunity to try. For the reasons set forth herein and in AIG's motion to dismiss, the motion to amend should be denied as futile, and this action should be dismissed with prejudice.

## ARGUMENT

### I.  THE PUBLIC DISCLOSURE BAR COMPELS DISMISSAL OF THIS CASE, AS UNDERSCORED BY THE "NEW ALLEGATIONS" IN PLAINTIFF'S PROPOSED THIRD AMENDED COMPLAINT

As AIG explained in its opening memorandum, the public disclosure bar prevents Plaintiff from pursuing his claims.  Mot. at 17–24.  Plaintiff's opposition brief advances a truly novel theory of Section 3730(e)(4)(A) that would require a defendant to disclose not just the facts underlying the alleged fraud (as the law now requires), but to disclose the ultimate legal conclusion that the defendant *has defrauded* the government.  The fundamental defect in both the

Second Amended Complaint and the proposed Third Amended Complaint is that key elements of the alleged fraud were publicly disclosed before Plaintiff filed suit. The proposed Third Amended Complaint makes this abundantly clear, as it relies extensively on yet more publicly-disclosed information in attempting to cure the deficiencies in the Second Amended Complaint.

A.     **The Public Disclosure Bar Forecloses Plaintiff's Claims**

AIG's motion demonstrated that "essential elements" of the alleged fraud were publicly disclosed in "news media" and "administrative … report[s]" prior to the commencement of this action, such that, "assuming that Relator's interpretation of unspecified insurance laws were correct, the public disclosures when viewed together were more than 'sufficient to raise the inference of fraud.'" Mot. at 23 (quoting *U.S. ex rel. Findley v. FPC-Boron Empls.' Club*, 105 F.3d 675, 687 (D.C. Cir. 1987)); *see also* Mot. at 17–23 (identifying the relevant public disclosures and relevant case law). AIG's motion further established that Plaintiff was not the "original source," as required under the False Claims Act, because he had, at best, secondhand knowledge of the alleged (and unspecified) unlawful insurance activities, and no involvement whatsoever with the Debt-Reduction Agreements, which were negotiated and executed months after he was terminated and have been publicly available for years. Mot. at 23–24.[1]

In response, Plaintiff argues that the only public disclosure that could bar this suit would be the specific disclosure that "AIG [allegedly] obtained $25 billion in debt-reduction by means of misrepresentations about ALICO and AIA." *See* Opp. at 1. More specifically, Plaintiff insists

---

[1]   The Debt-Reduction Agreement documents, attached as Exhibits D–G to the December 22, 2014 Declaration of Michael B. Carlinsky, Dkt. No. 31, are also available on the Securities and Exchange Commission website and the New York Federal Reserve Bank website:
http://www.sec.gov/Archives/edgar/data/5272/000095012309017102/y77933exv2w1.htm,
http://www.sec.gov/Archives/edgar/data/5272/000095012309017102/y77933exv2w2.htm,
http://www.newyorkfed.org/aboutthefed/aig/pdf/aia_aurora_agreement.pdf,
http://www.newyorkfed.org/aboutthefed/aig/pdf/alico_holdings_agreement.pdf.

that the alleged "fact that AIG made knowingly false representations about ALICO and AIA *to the federal government* and thereby obtained $25 million [sic] in debt reduction" must have been "publicly disclosed before this action was commenced."  Opp. at 19 (emphasis in original).  The public disclosure bar does not require such micro-specificity, and, unsurprisingly, Plaintiff cites to no authority in support of his novel interpretation.  Instead, a False Claims Act claim must be dismissed where, as here, the "information conveyed [in public disclosures] could have formed the basis for a governmental decision or prosecution, or could have at least alerted law-enforcement to the likelihood of wrongdoing."  Mot. at 23 (quoting *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)); *see also* Mot. at 22.  Plaintiff has no meaningful response to these cases.

AIG identified several relevant publicly disclosed marketing and underwriting activities that, if Plaintiff's theory were correct, would have "at least alerted law enforcement to the likelihood of wrongdoing."  Plaintiff still has not pointed to any *undisclosed* activities that supposedly constitute the unauthorized practice of an insurance business.  Instead, he offers only vague assertions regarding marketing and underwriting practices, without the requisite factual content.  *Compare* Opp. at 21–22 (acknowledging that the public disclosures identified in AIG's motion revealed marketing activities in New York) *with* Second Amended Complaint ¶¶ 55, 57, 68–69 (asserting that ALICO and AIA, through GMD, engaged in sales and marketing efforts of insurance products covering foreign insureds in New York City, Wilmington, Delaware, and other cities in the United States); *compare* Opp. at 23–24 (acknowledging that the Delaware insurance reports revealed "underwriting" activities in Delaware) *with* Second Amended Complaint ¶¶ 61 (vaguely referring to "underwriting" that allegedly "occurred in the U.S."), 63, 68–69 (alleging that "ALICO performed domestic underwriting for those policies out of its

Wilmington office" without providing any factual basis whatsoever).  These naked, conclusory assertions are insufficient to overcome AIG's showing that the marketing and underwriting activities underlying Plaintiff's claims were publicly disclosed before he brought this action.

> **B.     The Third Amended Complaint Compounds The Public Disclosure Problems**

The Third Amended Complaint is barred by the very same media reports and administrative reports that require dismissal of the Second Amended Complaint.  Much like the Second Amended Complaint, the Third Amended Complaint's vague and conclusory assertions regarding marketing and underwriting practices are indistinguishable from the public disclosures identified in AIG's motion to dismiss.  But the Third Amended Complaint is also barred for the additional and independent reason that it has now adopted whole-cloth factual allegations and legal conclusions that indisputably come from public disclosures.  More specifically, to the extent that the Third Amended Complaint provides any additional content as to alleged conduct and theories of liability, it is lifted from (i) filings in *AIG v. Lawsky*, 14-cv-2355 (AJN) (S.D.N.Y.), (ii) a Consent Order between the New York Department of Financial Services and AIG, (iii) a Consent Order between the Department of Financial Services and MetLife, or (iv) a Deferred Prosecution Agreement between the New York County District Attorney and MetLife—all publicly available and readily accessible on the Internet.[2]

---

[2]    *See* March 25, 2015 Declaration of Max Maccoby ("Maccoby Decl."), Exs. 1–3 (attaching Consent Orders and Deferred Prosecution Agreement).  AIG was neither involved with nor a party to either the MetLife Consent Order or the MetLife Deferred Prosecution Agreement.  The Consent Orders are available on the website of the Department of Financial Services.  *See* Consent Order, *In re AIG*, *available at* http://www.dfs.ny.gov/about/press2014/pr141031-consent.pdf; Consent Order, Consent Order, *In re Am. Life Ins. Co., Del. Am. Ins. Co., and MetLife, Inc.*, *available at* http://www.dfs.ny.gov/about/press2014/pr140331-amer-life.pdf.

By way of example only, the Third Amended Complaint's new allegations found at paragraphs 67–87[3] (concerning alleged New York-based activities), and 130, 133–48 (concerning the November 23, 2009 New York State Insurance Department Opinion Letter) are substantially similar (and at times identical) to paragraphs 6 through 16 of the Department of Financial Services-AIG Consent Order, published on the website of the Department of Financial Services.  Plaintiff has not explained how he developed these newfound factual allegations and theories five years after commencing this action.  The only reasonable conclusion is that he did not.  Indeed, in other portions of the Third Amended Complaint, Plaintiff expressly refers to and incorporates the Consent Orders and the MetLife Deferred Prosecution Agreement.  *See* Third Amended Complaint ¶¶ 176–85.[4]  These court filings, consent orders, and deferred prosecution agreement (each of which is available online)[5] indisputably constitute public disclosures.  *See, e.g., Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 290–91, 297 (S.D.N.Y. 2013) ("news media" includes publicly accessible websites); *McElmurray v. Consol. Gov. of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1253 (11th Cir. 2007) (holding that reports and notifications prepared by a state administrative agency are "administrative reports" under § 3730(e)(4)(A)).

**C.    Plaintiff Has Effectively Conceded That He Is Not An "Original Source"**

Because Plaintiff has not and cannot meet his burden of establishing that his claims are not "based on" or "substantially similar" to the prior undisputed public disclosures, this action

---

[3]    *See* Opp. at 12 & n.33 (stating that the Third Amended Complaint "devotes almost four pages to spelling out the activities by and on behalf of ALICO and AIA that [allegedly] violated [New York Insurance Law] provisions," and citing paragraphs 67–87).

[4]    Aside from barring the Third Amended Complaint on subject matter grounds, Plaintiff's references to the Consent Orders and Deferred Prosecution Agreements are improper and must be stricken.  *See infra* Section II(B)(1).

[5]    *See* Maccoby Decl. ¶¶ 2–4.

must be dismissed unless Plaintiff can establish that he was the "original source."  *See, e.g., U.S. ex rel. Blundell v. Dialysis Clinic*, 2011 WL 167246, at *5 (N.D.N.Y. Jan. 19, 2011) (False Claims Act claim must be dismissed where the claim is based on information previously disclosed and for which the plaintiff is not the original source).  But Plaintiff has effectively conceded that he was not the original source.

AIG's motion to dismiss the Second Amended Complaint demonstrated that Plaintiff was not an original source both because he failed to plead "direct and independent knowledge" of the alleged "secret" insurance activities and because he had been terminated long before the Debt-Reduction Agreements were negotiated and executed.  *See* Mot. at 23–24.  Plaintiff does not even attempt to respond to AIG's argument, instead asserting that the "issue is … irrelevant" because of Plaintiff's misguided belief that there were no relevant public disclosures.  Opp. at 24. Plaintiff has thus forfeited any argument that he is an "original source."

Neither does the proposed Third Amended Complaint offer anything to remedy these failures, instead re-asserting in cursory fashion that "Relator was the original source of the allegations in this complaint," *see* Third Amended Complaint ¶ 188, that, "[a]s a result of his position as Worldwide Director of Human Resources, Relator had an inside view of the senior management in the Global Life Companies, and AIG as whole," *id.* ¶ 13, and asserting, for the first time, that "Relator was present at [unspecified] meetings attended by [unnamed] senior AIG officers, in which these matters were discussed, and otherwise has knowledge of the [unnamed] senior AIG officers having been informed of these matters," *id.* ¶ 151.

But these types of vague and unadorned allegations are insufficient.  In *U.S. ex rel. Schubert v. All Children's Health Sys., Inc.*, for example, the court explained in denying a motion for leave to filed a third amended complaint:

> Relator's Third Amended Complaint contains two allegations supporting her status as an original source. *First, she alleges that 'Relator is an original source'* …. *That is a legal conclusion*, however, not entitled to the presumption of trust. The Third Amended Complaint also *alleges that Relator held a high-level position* … however, does not explain how she was able to obtain various documents quoted in the Third Amended Complaint…. The Third Amended Complaint does *not allege how she obtained the information*, *nor does Relator explain or allege why certain details omitted from the Second Amended Complaint are included in the Third.*

941 F. Supp. 2d 1332, 1336 (M.D. Fla. 2013) (emphases added) (citations omitted).

This same analysis applies with full force here, particularly where Plaintiff does not claim to have any direct knowledge with respect to the negotiation and execution of the Debt-Reduction Agreements or any of the new allegations contained in public disclosures that he copied and pasted into the Third Amended Complaint, all of which Plaintiff concedes occurred months after he was fired.  *See, e.g.*, Third Amended Complaint ¶ 14 ("In March of 2009, Relator was terminated from his position."), ¶ 32 (stating that the Debt-Reduction Agreements were executed on June 25, 2009, three months after Plaintiff was terminated), ¶¶ 133–44 (new allegations relating to the November 23, 2009 Opinion Letter, the process for which, according to Plaintiff, first began at "some time before mid-July 2009," four months after Plaintiff was terminated); ¶¶ 156–58 (new allegations referring to Bill No. S7674-2009, which, according to link cited at n.10 of the Third Amended Complaint, went to committee vote on "June 1, 2010," fifteen months after Plaintiff was terminated and a year after the Debt-Reduction Agreements were executed); *see also* Opp. at 15 n.45 (acknowledging that "Relator no longer worked at AIG by the time the Debt-Reduction Agreements were executed").

"Because the public disclosure bar precludes suit based in *any part* on publicly disclosed information," and because Plaintiff is not an original source, the proposed Third Amended Complaint—like the Second Amended Complaint—fails under the public disclosure bar. *Schubert*, 941 F. Supp. at 1336 (M.D. Fla. 2013) (quotation marks removed); *see also*

*Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 476 (2007) ("Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim."). The Second Amended Complaint should be dismissed with prejudice and the motion for leave to file the proposed Third Amended Complaint should be denied as futile.

## II.    THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Plaintiff's motion to amend should be denied for two additional reasons.  Although this Court has discretion to grant leave to amend, it should decline to do so where, as here, Plaintiff has a history of failed attempts to cure deficiencies in the complaint and the proposed amendment would be futile.  *See, e.g.*, *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (reversing district court's grant of leave to amend where amendment was futile). A plaintiff who cannot cure the deficiencies in the complaint despite several amendments is not entitled to further leave to amend.  *See, e.g.*, *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (district court properly denied *qui tam* plaintiffs leave to file third amended complaint in light of "repeated failure to cure the deficiencies in their pleadings").  Similarly, the court should deny leave to amend when an "amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis."  *Kirk v. Heppt*, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006); *see also Oneida Indian Nation of N.Y. v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003).

### A.    Plaintiff Has Repeatedly Failed To State A Viable Claim Against AIG, And He Offers No Persuasive Reason Why He Should Be Given A Fourth Bite At The Apple

Plaintiff argues that he is entitled to a fourth shot at AIG because AIG did not previously have an opportunity to challenge the first two iterations of his complaint, which apparently had nothing to do with the Second Amended Complaint or the Third Amended Complaint.  Opp. at

10 ("The primary purpose of the second amendment was to drop the claim that had been asserted in the original complaint…."). That the pending motion to dismiss is AIG's first in this case is irrelevant to whether Plaintiff should be granted leave to file yet another amended complaint. Plaintiff commenced this suit five years ago and has had three opportunities to draft a complaint that stated a claim for violation of the False Claims Act; that is precisely the type of repeated failure to cure deficiencies that courts have recognized as a ground on which to deny leave to amend. *Gagne*, 565 F.3d. at 48 ("The original complaint was filed in 2006; the First Amended Complaint was filed in 2007; the Second Amended Complaint in January 2008. The district court's opinion was on June 20, 2008. Plaintiffs do not get a fourth chance to try to get it right."). Plaintiff makes a curious argument that the basis of the Second Amended Complaint and Third Amended Complaint is completely different from the original complaint and that the original complaint contained allegations and legal theories Plaintiff admits he never could have proved. *See* Opp. at 5–6 ("[T]he allegations of fraud that had been the basis for the original complaint[ ] had turned out … not to be viable."). It is unclear why Plaintiff believes that would justify further leave to amend, as it only demonstrates that he not only failed to state a claim under his current theory, but he failed to state a claim under *different* theories as well.[6]

Moreover, Plaintiff elsewhere admits that his previous amendments were intended not only to change the entire theory of his case, but also to "provide[] further factual details regarding the allegations that remained." Opp. at 6; *see also id.* at 10 ("[W]e used the opportunity to add some additional allegations in support of the claim that was not being dropped."). In other words, Plaintiff's previous amendments were unsuccessful attempts to correct the obvious deficiencies in the complaint. Relator is thus exactly the sort of plaintiff a

---

[6]   Plaintiff complains that AIG has "mischaracterize[ed]" the procedural history to date, but he does not identify any alleged mischaracterization in AIG's motion to dismiss.  Opp. at 10.

district court should not permit to amend again and again—by his own admission, he has failed to state a claim under numerous sets of legal theories and allegations.  And as explained below, he fails yet again in the Third Amended Complaint.  Plaintiff does not cite any deecision that suggests that leave to amend should be granted in such circumstances.

The deficiencies in the Second Amended Complaint demonstrate Plaintiff's haphazard approach to this lawsuit—an approach that has already shown no regard for the Court's or the parties' resources.  For example, Plaintiff now admits that in the Second Amended Complaint he "mistakenly said that ALICO was not licensed in Delaware."  Opp. at 13.  Had Plaintiff performed a simple Google search for "ALICO Delaware Insurance License," he would have found the very examination reports and press releases cited in AIG's motion.  Plaintiff now insists that what he *really* meant to allege is that even though ALICO had an insurance license, it was not entitled to certain regulatory exemptions.  *Id.*; *see also* Third Amended Complaint ¶¶ 46, 50–51, 88–91.  Meanwhile, the substance of those exemptions, how and when ALICO allegedly claimed those exemptions, the conduct ALICO allegedly engaged in that rendered the exemptions inapplicable, the alleged knowledge and complicity of AIG in ALICO's improper claiming of the exemptions, the effect that any of this had on the Debt-Reduction Agreements— all requirements of a well-pleaded complaint for violation of the False Claims Act, *Ping Chen*, 966 F. Supp. 2d at 304—are still left to the imagination in the Third Amended Complaint. Perhaps Plaintiff is saving those details for a *fourth* amended complaint.  Plaintiff is not entitled to, and should not be given, yet another opportunity to re-plead his claims.

**B.     Plaintiff's Proposed Third Amended Complaint Still Fails To State A Claim Under The False Claims Act**

Even if the Court were inclined to give Plaintiff a fourth swing at AIG, the Third Amended Complaint would miss badly.  Plaintiff still does not plead with the requisite

specificity or plausibility that AIG made a false statement, let alone that AIG *knowingly* made a false statement, or that the alleged false statements had any material effect on the Debt-Reduction Agreements.  Plaintiff is not entitled to prolong the inevitable by requiring AIG to respond to yet another amended complaint that is also doomed to fail.

### 1.   Much Of Plaintiff's New "Allegations" In The Third Amended Complaint Are Improper And Should Be Stricken

As an initial matter, much of what Plaintiff has added to the Third Amended Complaint must be stricken, because it is derived from the products of settlements between either AIG or MetLife and the State of New York.  According to Plaintiff, the Third Amended Complaint "cures" the Second Amended Complaint's "alleged deficiencies" by: (i) "devot[ing] almost four pages to spelling out the activities by and on behalf of ALICO and AIA" that allegedly violated New York Insurance law, *see* Opp. at 12 & n.33 (citing Third Amended Complaint ¶¶ 67–87); (ii) "alleg[ing] facts supporting the conclusion that AIG was involved in ALICO's concealment of its unlicensed activities from the New York insurance regulators," *see id.* at 7 (citing Third Amended Complaint ¶¶ 127–48, 155); and (iii) "describ[ing] the findings by the New York Department of Financial Services that AIG and ALICO had violated New York law" and "describ[ing] the consent orders arising from those findings, under which AIG paid a civil penalty of $35 million," *see id.* at 7 (citing ¶¶ 176–87).

Each of these purported "curing" allegations is lifted or "simply recast" from the Consent Orders and the Deferred Prosecution Agreement, and therefore must be stricken under Federal Rule of Civil Procedure 12(f).   As Judge Pauley explained in precisely these same circumstances:

> [I]t is clear that the *references to the CFTC's findings* [in a settlement order] are *properly stricken* from the Complaint.  To the *extent the Complaint describes the manipulative trading scheme*, those allegations *simply recast the CFTC's findings* and are derived wholesale from the CFTC Order.…  Although the CFTC Order

> included certain factual findings, it nevertheless was the product of a settlement between the CFTC and the Respondents, not an adjudication of the underlying issues in the CFTC proceeding.  Plaintiffs are therefore prohibited from relying of the CFTC Order to plead the underlying facts of liability.

*In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593–94 (S.D.N.Y. 2011) (emphases added); *see also In re Merrill Lynch & Co. Research Reports Secs. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) ("references to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)"); *Footbridge Ltd. v. Countrywide Home Loans, Inc.*, 2010 WL 3790810, at *5 (S.D.N.Y. Sept. 28, 2010) ("[D]efendants' motion to strike is granted with respect to the allegations … insofar as they are based on pleadings, settlements, and government investigations in other cases.").[7]

Accordingly, Paragraphs 67–87, 115–16, 127–48, 155, and 176–86 of the Third Amended Complaint should be ignored for purposes of considering whether the Third Amended Complaint states a viable claim against AIG.  For the reasons that follow, it does not.

### 2.   The Third Amended Complaint Still Fails To Plead A False Statement With Particularity, As Required By Rule 9(b)

Recognizing that the Second Amended Complaint was deficient in failing to identify even a single law that ALICO and AIA allegedly violated, Plaintiff now lists in his proposed Third Amended Complaint nearly every insurance licensing statute on the planet that could possibly be relevant.  But a string-cite of statutes does not solve the problem.  The proposed

---

[7]    The Second Amended Complaint and Third Amended Complaint also appear to quote from an internal attorney-client privileged memorandum.  *See* Second Amended Complaint ¶¶ 68–69; Third Amended Complaint ¶¶ 115–16.  To the extent that the paragraphs do refer to attorney-client privileged material, those paragraphs are prejudicial and should be stricken pursuant to Federal Rule of Civil Procedure 12(f).  *See, e.g.*, *Major League Baseball Props. Inc. v. Opening Day Prods., Inc.*, 1997 WL 525482, at *6 (S.D.N.Y. Aug. 22, 1997) (striking material from pleading that was "protected under the attorney-client privilege and is therefore prejudicial"); *see generally Collier v. Boymelgreen Developers*, 2008 WL 835706, at *10 (E.D.N.Y. Mar. 28, 2008) (striking settlement communications from complaint because such statements are "immaterial and/or prejudicial" and "inadmissible at trial").

Third Amended Complaint still fails to identify a single instance of unlicensed insurance business.   As to Illinois, California, North Carolina, and Colorado, Plaintiff inserts block quotations of statutory provisions, represents they are "similar to the New York requirements," and nakedly asserts "in addition to engaging in insurance business on behalf of ALICO and AIA in New York, GMD engaged in similar insurance business on behalf of ALICO and AIA elsewhere in the United States, including Illinois, California, North Carolina, and Colorado." Third Amended Complaint ¶¶ 51–65, 84.  What that conduct consisted of, who engaged in it, and how it violated the law is left unsaid.   These new allegations fall far short of Rule 9(b)'s heightened pleading standard.  *See, e.g.*, *Ping Chen*, 966 F. Supp. 2d at 301 ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

To establish a violation of these statutes such that AIG's representations in the Debt-Reduction Agreements were false (to say nothing of materiality, which is discussed below in Section II(B)(4)), Plaintiff must do more than simply say that GMD personnel in New York held internal sales meetings, made phone calls, made occasional customer visits, and that they engaged in "similar" conduct elsewhere.  *See* Third Amended Complaint ¶¶ 74–77, 84.  For Plaintiff to state a claim under the False Claims Act pursuant to his theory, he must explain why the conduct amounted to doing an insurance business under each state's law.  *See, e.g.*, *U.S. ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, 38 F. Supp. 3d 398, 409–11 (S.D.N.Y. 2014) (dismissal appropriate in False Claims Act case based on false certification of compliance with law where relator fails to allege sufficient facts to conclude defendant was, in fact, not in compliance with the law); *see also Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) (to satisfy Rule 9(b), Plaintiff must "explain why the statements were fraudulent").  Additionally, he must provide a reasonable basis for concluding that this conduct

14

required an insurance license and that failure to obtain a license gives rise to a penalty.  Instead, the Third Amended Complaint makes the perfunctory claim that "GMD's activities in New York on behalf of ALICO and AIA constituted the doing of an insurance business by ALICO and AIA, for which ALICO and AIA were required to (but did not) have New York licenses."  Third Amended Complaint ¶ 80.[8]  That is a plain legal conclusion that the Supreme Court has rejected as insufficient to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks and citation omitted)).

### 3.   The Third Amended Complaint Still Fails To Plead That AIG Acted Knowingly

#### (a)   Plaintiff fails to provide a plausible factual basis for the new allegations concerning individuals that allegedly "knew about" the alleged violations of law.

The Third Amended Complaint also purports to supplement the barebones allegations in the Second Amended Complaint regarding AIG's knowledge of ALICO's and AIA's supposedly illegal conduct.  *See* Third Amended Complaint ¶¶ 150–62.  Among Plaintiff's new allegations is a list of ten AIG officers and employees who Plaintiff alleges knew about ALICO's and AIA's supposed violations of insurance and tax laws.  Third Amended Complaint ¶ 153.  These ten individuals include Maurice Greenberg, the CEO of AIG until his departure from AIG in March 2005, more than four years before the Debt-Reduction Agreements were signed; Howard Smith, about whom the Third Amended Complaint says nothing more than that he "was until sometime in 2005 AIG's vice chairman and chief financial officer"; R. Kendall Nottingham, who retired in 2007; Nicholas O'Kulich, who retired in 2004; and Edmund Tse, who, judging from the Third

---

[8]   Although the Third Amended Complaint purports to be against both ALICO and AIA, the allegations against AIA are even less substantial.

Amended Complaint, left AIG in 2008.  *Id.*  Plaintiff gives no basis for concluding any of these people even had knowledge of ALICO's and AIA's alleged violations of law, let alone that they somehow had knowledge of misstatements in transactions that post-date their tenure with AIG or that their knowledge could be imputed to AIG after they left the company.  In other words, Plaintiff's inclusion of these names in the Third Amended Complaint appears to be nothing more than a transparent attempt to give the *appearance* of addressing the failures in the Second Amended Complaint, but only adding conjecture without any factual support for the allegations.[9]

As to the five remaining individuals—Paula Reynolds, David Herzog, Chris Swift, Rodney Martin, and Joyce Phillips—Plaintiff still does not plausibly allege knowledge by AIG sufficient to support False Claims Act claims.  Chris Swift, Rodney Martin, and Joyce Phillips each worked for ALICO and are alleged to have known of ALICO's illegal insurance business, while also holding positions with AIG.  Third Amended Complaint ¶¶ 153, 155.  Beyond the mere allegation that these three individuals had business cards that said "AIG," Plaintiff offers nothing to show that these individuals were involved in the negotiation or execution of the Debt-Reduction Agreements, nor that they were aware (or recklessly aware) of the alleged falsity of the representations in those Agreements.[10]

---

[9]   A particularly egregious example of this can be found in paragraph 32, where Plaintiff alleges that the Debt-Reduction Agreements were executed either at the office of Davis Polk & Wardwell, Weil, Gotshal & Manges, or AIG.  Plaintiff no doubt includes this information to give the appearance that he is so knowledgeable about the matters alleged in the Third Amended Complaint that he even knows where the deals were signed.  Except, he does not: "(This allegation is based on the fact that in deals as large as the Debt-Reduction Agreements, it is customary for the deal papers to be executed at the offices of counsel for one of the parties, except where the agreement is executed in counterparts (as was permitted under § 6.12 of each agreement).  It is therefore reasonable to infer that the Debt-Reduction Agreements were executed on behalf of AIG at one of the locations stated above.)"  Third Amended Complaint ¶ 32.

[10]   Plaintiff claims he "was present at meetings attended by [unnamed] senior AIG officers" at which these matters were a "recurring topic of discussion" and that Plaintiff "otherwise has knowledge of the [unnamed] senior AIG officers having been informed of these matters," though what the knowledge is, how he "otherwise" knows of it, or why these allegations are appearing for the first time in the Third Amended Complaint, Plaintiff does not say.  Third Amended Complaint ¶ 151.

David Herzog, comptroller and later CFO of AIG, is alleged to have questioned the payroll codes applied to GMD, Third Amended Complaint ¶ 107, and to have recognized that ALICO could not conduct insurance business in the United States, *id.* ¶ 110.   Based on that, Plaintiff concludes that Herzog was aware that AIG defrauded the Federal Reserve, though how these facts amount to Herzog's knowledge that alleged misrepresentations were made in the Debt-Reduction Agreements is left entirely unexplained.

Finally, Paula Reynolds, who executed the Debt-Reduction Agreements on AIG's behalf, Third Amended Complaint ¶ 31, is alleged to have known "about the Debt-Reduction Agreements, and about the representations and warranties that AIG made in those agreements, when those agreements were executed by AIG," *id.* ¶ 154.   But Plaintiff does not contend that Reynolds knew of the alleged falsity of those representations.   The closest that Plaintiff comes is his assertion, based "[u]pon information and belief," that Reynolds knew ALICO had sought an advisory opinion from the New York Department of Insurance in 2009, *id*. ¶ 155.   As an initial matter, knowledge that ALICO had requested an advisory opinion does not equal knowledge of an illegal insurance business.   Even as to this claim, however, Plaintiff concedes that these allegations are not based on his personal knowledge (he was terminated nearly four months before the execution of the Debt-Reduction Agreement and nine months before the closing), but rather on speculation: "because of the importance and sensitivity of the decision to seek an advisory opinion from the NYSID, it is reasonable to infer that these individuals were involved in making the decision (or were at least of it), and that they were promptly informed of the substance of the NYSID's letter opinion." *Id.*

Thus, Plaintiff does not approach the "minimal factual basis" that he acknowledges is required, Opp. at 13 & n.38, let alone a "strong inference" of intent required by the very

authority he cites, *see id.* (citing *Dreick Finanz AG v. Sun*, 1990 WL 11537, at *3 (S.D.N.Y. Feb. 9, 1990) (scienter requires "at least a minimal factual basis" that supports a "strong inference" of intent)).   The proposed Third Amended Complaint fails to allege facts demonstrating that a single AIG official responsible for the Debt-Reduction Agreements knew that the representations and warranties were false.   Instead, Plaintiff apparently relies on a theory of "collective knowledge," which has been expressly rejected by courts construing the mental state required under the False Claims Act.  *See, e.g., U.S. v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1274–76 (D.C. Cir. 2010) (rejecting theory of "collective knowledge" under the False Claims Act, which would allow a plaintiff to prove scienter even if "no individual at [the corporate defendant] was simultaneously aware (or recklessly unaware) of the company's [certifications] and [the alleged conduct breaching those certifications]").   A corporation cannot be found to have violated the False Claims Act merely because "the company could have or should have realized it had potential [certification issues] based on the 'collective pool of information' derived from all of its individual employees."  *Id.*

> **(b)** **There is no "knowingly false statement" alleged because Plaintiff does not and cannot allege that the law was objectively clear in prohibiting ALICO's conduct and that AIG knew that ALICO's activities violated the law.**

Plaintiff faces other, insurmountable hurdles to demonstrating the requisite knowledge of falsity that is required to sustain his False Claims Act claims.  Specifically, there is no predicate "knowingly false statement" unless (1) the law was objectively clear; and (2) AIG knew that ALICO's activities violated the law.

As to New York, the only state Plaintiff discusses in more than a passing nod, none of AIA's or ALICO's domestic activities qualifies under Section 1101 of the New York Insurance Law as conducting an insurance business.  While individuals performed certain marketing

activities in New York on ALICO's and AIA's behalf, none was marketing or selling insurance products to New York insureds.  Neither were premiums maintained in New York.  Rather, ALICO and AIA products were intended for insureds located outside the United States and were marketed accordingly.  *See* Third Amended Complaint ¶ 69 ("GMD marketed and sold such policies to multinational companies to cover risks and individual insureds located in various countries outside the United States."), ¶ 72 (ALICO sold insurance to expatriates, foreign ministries, and multinational companies).[11]  Such foreign activities did not require a New York license.

Section 1101(b) of the statute defines "doing an insurance business" as follows:

[A]ny of the following acts *in this state*, effected by mail from outside this state or otherwise, by any person, firm, association, corporation or joint-stock company shall constitute *doing an insurance business* in this state and shall constitute doing business in the state within the meaning of section three hundred two of the civil practice law and rules:

(A) making, or proposing to make, as insurer, any insurance contract, *including either* issuance or delivery of a policy or contract of insurance to *a resident of this state* or to any firm, association, or corporation authorized to do business herein, *or solicitation of applications* for any *such* policies or contracts;

N.Y. Ins. Law § 1101(b)(1)(A) (emphases added).  These statutes are clear that "doing an insurance business in this state" (and thus the New York licensing requirement) is limited to activities relating to insurance contracts *made in New York* or with *New York insureds*, and does not extend to contracts made outside of New York with non-New York insureds.

Indeed, the legislative history of the statute confirms that the licensing regime was designed to protect *New York* consumers from unscrupulous insurance companies selling

---

[11]   Plaintiff now asserts, for the first time, that "GMD also sold insurance on behalf of ALICO and AIA that covered insureds and/or risks located within the United States."  Third Amended Complaint ¶ 78.  Not only does this contradict the Second Amended Complaint, *see* ¶¶ 56, 61, it is just more of the same type of conclusory allegations that are insufficient under *Twombly* and *Iqbal*.  *See, e.g.*, *Iqbal*, 556 U.S. at 678 (court may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

fraudulent or unregulated products.  *See* Mem. from Richard E. Stewart, Superintendent of Ins., to Gov. of N.Y. (May 1, 1970) ("The 1969 bill was similar to the current bill in its intent *to protect residents of this state* from mail solicitations from unauthorized insurers whose responsibility and soundness is questionable…. The bill's salutary effect is to require foreign insurers to qualify under our laws before they may *solicit our residents*") (emphases added); N.Y. Bill Jacket, 1970 A. 3786, ch. 295 (Gov.'s Mem.) ("The purpose of the bill is to protect *residents of this state* from solicitation by mail by insurance companies which may be financially unsound or irresponsible.") (emphasis added); *see also* 1993 N.Y. Sess. Laws ch. 663 (McKinney) ("The legislature hereby finds and declares that a principal goal of effective insurance regulation must be to allow *citizens of this state* reasonable access to financially sound and reliable insurers….") (emphasis added); Ins. Law Revision of the State of N.Y. (Tentative Draft) § 50.3 cmt., at 106 (1937) ("[T]he chief concern of the State of New York is the regulation of insurance on property on risks within its borders.").

Notwithstanding the text and legislative history of the relevant statutory provisions, Plaintiff contends that ALICO's marketing (through GMD) of *foreign* life insurance products regulated by *foreign* insurance authorities and covering exclusively *foreign* insureds constitutes "doing an insurance business" under the New York Insurance Law.  Third Amended Complaint ¶¶ 67–85.  Although Plaintiff asserts that "both ALICO and AIA at all relevant times conducted substantial domestic U.S. insurance business, such as underwriting, marketing, sales, and claims administration," *id.* at ¶ 66, he provides nothing beyond his own conclusory allegations.

Plaintiff's position that AIA and ALICO required licenses in order to conduct their marketing activities is further undermined by the fact that they *were not eligible* for a New York insurance license absent sales of insurance to New York residents.  The licensing process is

governed by the Uniform Certificate of Authority Application ("UCAA"), which would have required ALICO to file a UCAA expansion application to obtain a license.  *See* Insurer Admission Application, Dep't of Fin. Services, http://www.dfs.ny.gov/insurance/insure_app.htm (last visited May 12, 2015) ("All insurance companies other than non-profit corporations … must use the NAIC's Uniform Certificate of Authority Applications (UCAA)").  For such an application to be accepted, ALICO would have been required to comply with several provisions, including the disclosure of information specific to the selling of insurance *to New York residents*. Such information includes but is not limited to:

- Product lines currently sold or planned;
- Specialty line or lines currently sold and planned;
- Marketing plan (including how New York fits into ALICO's overall plan);
- Detailed description of planned advertising;
- Current and expected competition (both regionally and nationally);
- Plan of operations (including how policies are underwritten and cancelled; premiums handled; and personnel trained, supervised, and compensated);
- Three-year premium and loss projections for each line of business;
- Minimum capital and surplus requirements;
- Statutory deposit requirements.[12]

Since neither ALICO nor AIA wrote insurance for New York or other domestic insureds,[13] they could not provide most of the information required to obtain a license and thus could not have expected to need such a license, nor been eligible for such a license according to the statutory and regulatory terms.

Because ALICO's and AIA's activities did not require insurance licenses, the representation and warranty in the Debt-Reduction Agreements that they had all required

---

[12]  *See* Uniform Certificate of Authority Application Questionnaire, Nat'l Assoc. of Ins. Comm'rs, *available at* http://www.naic.org/documents/industry_ucaa_form08.doc (last visited May 12, 2015).

[13]  And Plaintiff's barebones allegation to the contrary, Third Amended Complaint ¶ 78, is entitled to no deference whatsoever.  *See, e.g.*, *Iqbal*, 556 U.S. at 678 ("mere conclusory statements" are insufficient).

licenses was not false.  As a result, there is no cause of action under the False Claims Act.  *See, e.g., Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 732–33 (7th Cir. 1999) (certification of compliance with requirement that plasma be tested was not "false" where regulation did not require use of particular test, defendant tested plasma, and test defendant employed was not the equivalent of "no testing," as plaintiff had contended); *Castenson v. City of Harcourt*, 86 F. Supp. 2d 866, 880–81 (N.D. Iowa 2000) (certification of fulfillment of requirements to obtain funding under National Environmental Policy Act was not false where plaintiff failed to show that the Act required an archeological survey the applicant did not obtain).

But Plaintiff's theory of "falsity" is even more speculative than appears on the face of the complaint.  Errors based simply on "differences in interpretation growing out of disputed legal questions" cannot be *knowingly false* under the False Claims Act.  *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 329 (S.D.N.Y. 2004) (quoting *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999)); *see also U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin., Corp.*, 690 F.3d 951, 957 (8th Cir. 2012) (plaintiff must show that there is "no reasonable interpretation of the law that would make the allegedly false statement true" (quoting *U.S. ex rel. Hixon v. Health Mgmt. Sys. Inc.*, 613 F.3d 1186, 1191 (8th Cir. 2010)).  That is so because a defendant cannot be found liable for "knowingly" making a false statement with respect to compliance with the law where the law is objectively unclear.  *Cf. U.S. v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("criminal prosecution for the violation of an unclear duty itself violates the clear constitutional duty of the government to warn citizens whether particular conduct is legal or illegal," *regardless* of the defendant's subjective state of mind (quoting *U.S. v. Mallas*, 762 F.2d 361, 363 (4th Cir. 1985)).

Courts do not hesitate to dismiss False Claims Act complaints premised on allegedly false certifications that a defendant complied with applicable law, where the complaint does not demonstrate that the defendant's construction of the law is unreasonable.  *See, e.g.*, *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 316 (S.D.N.Y. 2011) ("Where a relator alleges that a claimant's interpretation of an ambiguous regulation renders its claims false under the FCA, falsity is evaluated by examining whether the interpretation is *correct* in light of applicable law; but whether a claimant acted knowingly in submitting a false claim turns on the *reasonableness* of the claimant's interpretation."), *aff'd*, 531 F. App'x 118 (2d Cir. 2013).[14]

As Judge Chin explained in dismissing a claim for false certification of compliance with the law:

> Even assuming the claims submitted by [defendants] were "false," given the lack of clarity in the law, it cannot be said that defendants "knew" the claims were false.  In the absence of a clear obligation on the part of [defendants] to bill for each component separately, FCA liability is not appropriate, for the FCA is intended to punish only "wrongdoing," not honest mistakes…. [Relator]'s inability to identify any regulation violated by defendants demonstrates that defendants' interpretation of the Medicare regulations was not unreasonable, and thus not knowingly false or fraudulent.

*Colucci*, 785 F. Supp. 2d at 316.  This principle ultimately dooms Plaintiff's claims.

As AIG demonstrated in its complaint and its opposition to defendant's motion to dismiss in *AIG v. Lawsky*, 14-cv-2235 (AJN) (S.D.N.Y.), the better reading of New York insurance law does not cover the conduct at issue; and, if there were any doubt on that score, the doctrine of

---

[14]   *See also U.S. ex rel. Streck v. Allergan, Inc.*, 894 F. Supp. 2d 584, 600 (E.D. Pa. 2012) (dismissing False Claims Act claim where relator failed to show that defendants' construction of relevant statute was "not a reasonable interpretation … let alone to plausibly infer that [defendants] engaged in the unjustifiably high risk of violating the statute" (quotation marks removed); *Thulin v. Shopko Stores Operating Co.*, 2013 WL 5946503, at *7 (W.D. Wis. Nov. 5, 2013) ("Indeed, numerous district courts have dismissed … FCA claims at least in part because a debate surrounding the plaintiff's theory of falsity precludes any finding of knowledge."); *cf. U.S. ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532 (6th Cir. 2012) ("The defendants are correct, irrespective of whether they in fact violated the regulations.  The False Claims Act is not a vehicle to police technical compliance with complex federal regulations.").

constitutional avoidance resolves it.  Any attempt to penalize the conduct at issue here would violate the dormant Commerce Clause, the Due Process Clause, and the First Amendment. These issues were briefed extensively in *AIG v. Lawsky*, though were not resolved, as the parties reached a settlement.  *See* Mem. in Opp. to Mot. to Dismiss at 34–41, 14-cv-2355 (AJN), Dkt. No. 36; *see also* Am. Compl. at ¶¶ 52–79, 14-cv-2355 (AJN), Dkt. No. 29.   Plaintiff must overcome the same constitutional arguments AIG asserted in *AIG v. Lawsky*, if he intends to prove AIG knowingly made a false statement about whether ALICO's activities were in compliance with applicable laws.

### 4.      The Third Amended Complaint Fails To Allege That The Purported Misrepresentations Were Material

Even if Plaintiff had succeeded in establishing AIG made a knowingly false statement, he has not established, and cannot establish, materiality as required under the False Claims Act.  *See* 31 U.S.C. § 3729(a)(1)(G).   Plaintiff asserts that the alleged false statements resulted in an overvaluation of ALICO and AIA by $100 million.   Third Amended Complaint ¶ 167.   He provides absolutely no justification for this value; but even if it were accurate, the Debt-Reduction Agreements only valued the companies at $24.4 billion.   *See* Third Amended Complaint ¶ 40(a).  But the amount of debt reduced in exchange for these $24.4 billion assets was ***$25 billion***.  *See* AIG, Current Report (Form 8-K) (Dec. 1, 2009) (after the Debt-Reduction Agreements closed the Federal Reserve "reduce[d] the outstanding balance of the FRBNY Facility … by $25 billion"); *see also* Third Amended Complaint ¶ 38.  Plaintiff offers nothing other than his own *ipse dixit* that a valuation of $24.3 billion (a variation of less than half of one percent) was a material difference to the Federal Reserve and would have precluded the $25 billion debt reduction.  That is insufficient to plead materiality under the False Claims Act.  *See, e.g.*, *U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1204 (10th Cir. 2006) ("[T]he

[materiality] inquiry focuses on *the potential effect* of the false statement when it is made, not on

the actual effect of the false statement when it is discovered." (quotation marks removed)).

Moreover, after the Debt-Reduction Agreements were consummated, AIG repurchased

ALICO and AIA from the Federal Reserve, thereby repaying the "New York Fed … in full for

its preferred interests in the AIA and ALICO special purpose vehicles."  Mot. at 8 & n.11

(quoting FRBNY's January 14, 2011 Press Release).  In other words, the Federal Reserve never

even suffered the loss that it *set out to suffer* when it entered into the Debt Reduction

Agreements.  Thus, even if Plaintiff had plausibly pleaded a knowing misrepresentation in the

Debt-Reduction Agreements (he has not), he could not establish that the misrepresentation had

any impact whatsoever on the Federal Reserve, let alone that it had a material impact on its

reduction of AIG's debt, and Plaintiff cannot dispute this.  *See Cook Cnty. v. U.S. ex rel.*

*Chandler*, 538 U.S. 119, 129 (2003) (in enacting the False Claims Act, "Congress wrote

expansively, meaning to reach all types of fraud, without qualification, that might result in

*financial loss* to the Government." (internal quotations marks omitted) (emphasis added)).

## CONCLUSION

For the foregoing reasons, Plaintiff's Second Amended Complaint should be dismissed

with prejudice and Plaintiff's motion for leave to amend should be denied.

Dated:     Washington, D.C.              QUINN EMANUEL URQUHART
           May 12, 2015                  & SULLIVAN, LLP

                                         /s/ *William A. Burck*
                                         Michael B. Carlinsky
                                         51 Madison Avenue, 22nd Floor
                                         New York, New York 10010
                                         Telephone: (212) 849-7000
                                         Facsimile: (212) 849-7100
                                         michaelcarlinsky@quinnemanuel.com

William A. Burck
Lori Alvino McGill
777 6th Street, 11th Floor
Washington, D.C. 20001
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
williamburck@quinnemanuel.com
lorialvinomcgill@quinnemanuel.com

*Attorneys for Defendant American
International Group, Inc.*