

a professional corporation

**Neal Goldfarb**
**202 454 2826**
goldfarb@butzel.com

Suite 300   1747 Pennsylvania Avenue N.W.
Washington, D.C. 20006
**T:** 202 454 2800  **F:** 202 454 2805
**butzel.com**

*Also admitted in Maryland and Virginia*

**By ECF**
August 18, 2015

Hon. George B. Daniels
United States District Judge
Daniel Patrick Moynihan Courthouse
500 Pearl St.
New York, NY 10007

    Re:    *United States ex rel. Grabcheski v. American International Group, Inc.*, No. 10-cv-3902
           Response to AIG's post-hearing letter brief

Dear Judge Daniels:

    In its post-hearing letter brief, defendant AIG advances two new arguments in support of its contention that the Court lacks subject-matter jurisdiction: *first*, that Mr. Grabcheski did not disclose his allegations to the government before this action was commenced, and *second,* that he was not an original source because "the central premise" of his claim was supposedly "conceived not by [Mr. Grabcheski] but by a third party—namely, his attorney." As we will show in this letter, those arguments are baseless.

    Both of those arguments focus on whether Mr. Grabcheski qualifies as an "original source" under 31 U.S.C. § 3730(e)(4)(B), and they therefore assume that if he was not an original source, the Court lacks jurisdiction. But that assumption is unwarranted. The original-source issue does not even arise unless it is shown that the claims here are "based upon the public disclosure of allegations or transactions" in certain sources specified in § 3730(e)(4)(B). And in this case there was no such disclosure. As a result, the arguments in AIG's letter are irrelevant.

    And even if AIG's arguments mattered, the fact would remain that Mr. Grabcheski *was* an original source. AIG's first argument (that Mr. Grabcheski failed to disclose his allegations to the government before filing this action) is wrong on the facts. Although we had not previously located any document showing that we made such a disclosure, one of Mr. Grabcheski's counsel has located among his emails a message showing that we in fact did so. On March 26, 2010—a month and a half before the original complaint was filed—we sent a draft disclosure statement to

the United States Attorney's Office, and in that statement we described ALICO's unlicensed insurance activity in New York.

AIG is also mistaken in its argument that the allegations regarding ALICO originated with Mr. Grabcheski's counsel rather than with Mr. Grabcheski himself. That argument is based on a misinterpretation of what undersigned counsel said at the July 22, 2015 motions hearing. When counsel said that "the idea of the claim" had come from Mr. Grabcheski's counsel, he did not mean that the factual allegations about ALICO originally came from counsel. Rather, what he meant was that counsel had come up with the idea of using those allegations as the basis for a False Claims Act claim.

Finally, contrary to what AIG contended at the motions hearing, the allegations about ALICO did not originate with U.S. Attorney's Office. They came from Mr. Grabcheski, and they were based on his personal communications and observations while he worked at AIG. We are submitting along with this letter a supplemental declaration from Mr. Grabcheski that provides the kinds of details that the Court was asking for at the hearing—details of how Mr. Grabcheski learned that ALICO was engaging in unlicensed insurance activity in New York, as well as first-hand evidence that some of AIG most senior officers were aware of that as well.

1. **The Court need not reach the original-source issue because there was no relevant public disclosure.**

a. *Disclosure to the government is not a jurisdictional requirement unless the public-disclosure bar has been triggered.*

Contrary to what AIG contends, Mr. Grabcheski was not required to disclose the allegations to the government before commencing the action. Under § 3730(e)(4) (2009), on which AIG relies, there is no pre-filing disclosure requirement unless the action is "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media[.]"[1] If the action is based on such a public disclosure, the court lacks jurisdiction unless the plaintiff shows that he was an original source, which in turn requires that he show (among other things) that he "has direct and independent knowledge of the information on which the allegations are based" and that he "has voluntarily provided the information to the Government before filing an action under this section which is based on the information."[2]

The caselaw makes clear beyond any doubt that the original-source issue (and therefore the question of pre-filing disclosure to the government) does not arise unless the action is "based

---

1. 31 U.S.C. § 3730(e)(4)(A) (2009).

2. 31 U.S.C. § 3730(e)(4)(B) (2009).

upon the public disclosure of allegations or transactions" in one of the sources listed in the statute. Several cases in this district have held that § 3730(e)(4) establishes a two-part test: (1) was there a public disclosure, and (2) if so, was the plaintiff an original source?[3] And as the court explained in *United States ex rel. Mikes v. Straus*, "If the answer to the first question is negative, section 3730(e)(4)(A) does not bar jurisdiction, and the court need not proceed to the second step of the jurisdictional analysis."[4] The other cases make the same point, as do numerous decisions from other circuits.[5]

Thus, before reaching the question whether Mr. Grabcheski was an original source, the Court must decide whether there was a relevant public disclosure before Mr. Grabcheski's claim was asserted. As we will show, (1) there was no such disclosure before the filing of either the original complaint or the first amended complaint, so the Court acquired jurisdiction over Mr. Grabcheski's claim whether or not he was an original source, (2) regardless of whether Mr. Grabcheski was an original source, the disclosures in 2014 did deprive the Court of its preexisting jurisdiction, and (3) in any event, Mr. Grabcheski was an original source.

### b. The Court acquired jurisdiction over both the original complaint and the new claims asserted in the first amended complaint because there was no relevant public disclosures before either complaint was filed.

As we noted in the reply in support of our motion for leave to amend, the existence of subject-matter jurisdiction is determined as of the commencement of an action, and if the court

---

3. *United States v. Huron Consulting Grp., Inc.*, 843 F. Supp. 2d 464, 468 (S.D.N.Y. 2012) *aff'd sub nom. Associates Against Outlier Fraud v. Huron Consulting Grp., Inc.*, 567 F. App'x 44 (2d Cir. 2014); *U.S. ex rel. Woods v. Empire Blue Cross & Blue Shield*, No. 99 CIV. 4968 (DC), 2002 WL 1905899, at *5 (S.D.N.Y. Aug. 19, 2002); *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 453 (S.D.N.Y. 2001).

4. 931 F. Supp. 248, 253 (S.D.N.Y. 1996).

5. *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 782 F.3d 260, 262 (6th Cir. 2015), *petition for cert. filed,* No. 15-96 (docketed July 22, 2015); *United States v. Bank of Farmington*, 166 F.3d 853, 859 (7th Cir. 1999), *overruled in part on other grounds, Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009); *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 n.6 (10th Cir. 1996); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 651 (D.C. Cir. 1994); *Wang v. FMC Corp.,* 975 F.2d 1412, 1416 (9th Cir.1992), *overruled in part on other grounds*, *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. 12-55396, 2015 WL 4080739, at *6 (9th Cir. July 7, 2015); *U.S. ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1500 (11th Cir. 1991); *U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, Civil Action No. 13-2983, 2014 WL 4375638, at *11 n.16 (E.D. Pa. Sept. 4, 2014); *U.S. ex rel. Rostholder v. Omnicare, Inc.*, No. CIV. CCB-07-1283, 2012 WL 3399789, at *10 (D. Md. Aug. 14, 2012), *aff'd,* 745 F.3d 694 (4th Cir.), *cert. denied*, 135 S. Ct. 85 (2014).

has jurisdiction then, it does not lose that jurisdiction as a result of later events.[6] In its letter, AIG agrees with the first point, and it says nothing that might cast doubt on the second.[7]

Moreover, AIG does not contend that the Court lacked jurisdiction when this action commenced. As the Court is aware, the original complaint asserted a claim different from the one that Mr. Grabcheski is currently pursuing, and AIG has never contended that the Court lacked jurisdiction over that original claim. Therefore, it is undisputed that when Mr. Grabcheski filed the first amended complaint, in which he first asserted his current claim, the Court had already acquired jurisdiction over this action.[8]

It is true that if the new claim had been "based upon the public disclosure of allegations or transactions" in any of the sources specified in the False Claims Act, the Court would have jurisdiction over that claim only if Mr. Grabcheski is an original source.[9] But as we have shown in our previously-filed papers, there had been no such disclosure.[10] Although AIG has pointed to three news releases and an examination report by the Delaware insurance regulators, none of those publications disclosed the "allegations or transactions" regarding ALICO's unlawful insurance activity.

The public-disclosure bar applies only if there was a disclosure of "the material elements of the 'allegations or transactions' on which the claim is based." In particular, the claim is barred "only when either the allegation of fraud or the critical elements of the fraudulent transaction were themselves in the public domain[,]"such that the disclosures "could have formed the basis for a governmental decision on prosecution, or could at least have alerted law-enforcement authorities to the likelihood of wrongdoing."[11] AIG has not remotely met that requirement.

At the motions hearing, AIG relied only on an AIG press release from March 2008, which it described as having disclosed that the Group Management Division ("GMD") "had people working here [in New York] who were marketing ALICO's products to multinational corporations."[12] But in fact, the press release said only that GMD was "headquartered" in New

---

6. Relator's Reply Memo. 1–2 (ECF No.51).

7. AIG Letter 1–3 (ECF No.67).

8. Even if the first amended complaint did not state a claim on which relief could be granted, that would not mean that the Court lacked jurisdiction. *See, e.g.*, *Bell v. Hood*, 327 U.S. 678, 682 (1946); *United States v. Vazquez-Alvarez*, 760 F.3d 193, 198 (2d Cir. 2014).

9. 31 U.S.C. § 3730(e)(4) (2009).

10. Relator's Memo. in Support of Mtn. for Lv. to Amend & in Opp. to Mtn to Dismiss 19–24 (ECF No. 42).

11. *United States ex rel. Spring Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994), *quoted in* Relator's Memo. in Support of Mtn. for Lv. to Amend & in Opp. to Mtn to Dismiss 18 (ECF No.42).

12. Tr. of Mtn. Hrg. 13:11–19 (emphasis added):

York, and said nothing about where its marketing activities were performed. And although AIG seems to contend that the press release referred to marketing activity implicitly, that argument is undermined by the fact that when AIG's counsel quoted from the press release at the hearing, he left out language conveying the impression that marketing activity took place outside of New York. The passage that AIG's counsel quoted is as follows, with the omitted language being restored in italics:

> AIG Group Management Division (GMD) is a division of the life insurance subsidiaries of AIG. Headquartered in New York, GMD operates in more than 100 countries *through a regional and local management structure*. GMD's employee benefits, credit insurance, and global pension products and services are offered through the various life insurance subsidiaries of AIG, including American International Assurance (AIA), [and] American Life Insurance Company (ALICO)[.][13]

To suggest that this innocuous language would have "alerted law-enforcement authorities to the likelihood of wrongdoing"[14] is absurd.

In short, there is no basis to think that when the first amended complaint was filed, it was (in the statute's words) "based upon the public disclosure of allegations or transactions" in one of the specified sources. That being the case, it is irrelevant whether Mr. Grabcheski made the sort of pre-filing disclosure that would be required for him to qualify as an original source.[15]

c. *The disclosures in 2014 did not call into question the jurisdiction that the Court had previously acquired.*

Given that the Court had jurisdiction over the claims in the first amended complaint, the next question is whether that jurisdiction was somehow called into question as a result of the disclosures that occurred in 2014 (such as the disclosure of the consent orders between the Department of Financial Services on the one hand, and MetLife, ALICO, and AIG on the other). The answer to that question is no.

---

> The gravamen of their claim is that GMD, from New York, had people working here who were marketing ALICO's products to multinational corporations. It actually doesn't matter for their theory whether or not the multinational corporations are in the United States or overseas. What matters is that there was somebody here in New York doing it. That's theory. Your Honor, that is the case right there. That's the underlying activity. *And it was disclosed in March of 2008.*

13. Carlinsky Decl. Ex. I (ECF No. 31-9) (quoted in AIG Memo. in Support of Mtn. to Dismiss 20); *see* Tr. of Mtn. Hrg. 12:24–13:6.

14. *Spring Terminal Ry. Co. v. Quinn*, 14 F.3d at 654.

15. See cases cited at 2 nn. 3–5, above.

**(1)** As we noted in our reply memorandum (and again on pages 3–4, above), a federal court's subject-matter jurisdiction over a claim is determined based on the facts as they stood when the claim was filed; if the court has jurisdiction then, it retains jurisdiction despite later events.[16] AIG agrees with the first point and does not dispute the second. And as we also argued in our reply, although the second and third amended complaints were filed after the disclosures in 2014, their filing relates back to the filing of the first amended complaint claim in 2011, when the claim at issue was first asserted.[17] That argument similarly stands unrebutted by AIG.

Nor has AIG said anything that provides a basis for departing from these basic principles. Indeed, none of the cases it cites is even relevant. In both *United States ex rel. Branch Consultants, LLC v. Allstate Insurance Co.*[18] and *United States ex rel. Moore v. Pennrose Properties, LLC*,[19] the district court lacked jurisdiction at the get-go, so neither case presents the issue that is raised here: whether a court that has jurisdiction initially can lose that jurisdiction as a result of subsequent events.

In *Branch Consultants*, the *original* complaint had been held to have been based on public disclosures, and the court therefore held that in order to invoke the original-source exception to the public-disclosure bar, the plaintiff had to prove that he qualified as an original source when the original complaint was filed.[20] As the court noted, "If [the plaintiff's] action was barred under [the public-disclosure bar] at the time the original complaint was filed, the Court must dismiss the case, notwithstanding any amendments."[21] This case is entirely different because here it is undisputed that jurisdiction did exist when the action was commenced. So *Branch Consultants* has nothing to say about the issue that this case presents: whether and under what circumstances a court having jurisdiction will lose that jurisdiction due to postfiling events.

The same thing is true of *Moore*. There, too, the court lacked jurisdiction when the action was commenced, though the lack of jurisdiction resulted not from the public-disclosure bar, but from the first-to-file rule, under which a False Claims Act qui tam action is barred if another

---

16. *See, e.g.*, *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). Of course, the court can lose jurisdiction if the claim(s) on which jurisdiction is based are dismissed or withdrawn, but this is not such a case.

17. Fed. R. Civ. P. 15(c)(1)(B) (discussed in Relator's Reply Memo. 2).

18. 782 F. Supp. 2d 248 (E.D. La. 2011).

19. No. 11-CV-121, 2015 WL 1358034 (S.D. Ohio Mar. 24, 2015).

20. This can be seen from an earlier decision in the case. *United States ex rel. Moore v. Pennrose Properties, LLC*, 668 F. Supp. 2d 708, 787 (E.D. La. 2009) (original complaint filed on August 2, 2006); *id.* at 789–91 (describing public disclosures before that date).

21. *Id.* at 260.

action based on the same allegations is pending when it is filed.[22] The court rejected the plaintiff's argument that it could exercise jurisdiction because he had filed an amended complaint after the earlier action was dismissed.[23] As in *Branch Consultants*, the initial absence of jurisdiction was not something that could be cured by a later amendment.[24] And like *Branch Consultants*, *Moore* does not support AIG's argument.

Also distinguishable from this case is *Rockwell International Corp. v. United States*,[25] but for a different reason. The defendant in that case moved to dismiss the original complaint based on the public-disclosure bar, but the district court denied that motion on the ground that the plaintiff was an original source. The plaintiff subsequently filed an amended complaint, dropping the initial claim and adding a different claim. He conceded that his new claim was based on publicly-disclosed information, but argued that he was an original source of the new allegations and that in any case, because he had been an original source of the allegations in his original complaint, it did not matter whether he was also an original source for the new allegations supporting his amended complaint. The latter argument was rejected by the Supreme Court, which held that the plaintiff had to show that he was an original source for his amended claim.[26]

This case differs fundamentally from *Rockwell International*. Although our argument relies on the fact that jurisdiction existed when this case was commenced, it does not rely solely on that fact. Rather, we rely also on the fact that the Court acquired jurisdiction over the currently-pending claim when it was initially asserted in the first amended complaint.[27] In particular, we rely on the fact that when the first amended complaint was filed, there had been no relevant public disclosure and therefore the public-disclosure bar did not apply. In *Rockwell International*, on the other hand, the plaintiff conceded that his amended complaint's allegations had been publicly disclosed, and the Supreme Court held that the district court had never acquired jurisdiction over the amended complaint's new claim.

Moreover, the claims asserted in the second and third amended complaint are the same claim as was asserted in the first amended complaint—namely, the claim that AIG's representations and warranties in the Debt Reduction were knowingly false because ALICO and AIA were

---

22. 2015 WL 1358034 at *10–18.

23. *Id.* at 13–15.

24. *Id.* at 14.

25. 127 S. Ct. 1397 (2007).

26. 127 S. Ct. at 1408–10.

27. *See* Grabcheski Reply Memo. 1–2 (ECF No. 51). In this respect, our argument is fully consistent with *Rockwell International*, for we recognize that in addition to showing that the Court had jurisdiction when the action was commenced, we must also show that when the current claim was asserted in the first amended complaint, the Court acquired jurisdiction over it.

illegally engaging in insurance business in New York and elsewhere in the United States. Our argument is that the Court acquired jurisdiction over those claims when the first amended complaint was filed, and that the public disclosures in 2014 did not deprive it of that jurisdiction. Nothing in *Rockwell International* (or any other authority cited by AIG) calls that argument into doubt.

**(2)** The conclusion that the Court retains its preexisting jurisdiction is supported by *United States ex rel. Garbe v. Kmart Corp.*[28] and *United States v. Education Management, LLC*.[29] In both cases, the court held that an amended complaint was not barred despite the existence of an intervening public disclosure, because the claim in the amended complaint was a "continuation" of the claim that had been filed previously.[30] As we have noted, this case falls into the same category: the third amended complaint asserts the same claim that had previously been asserted in the first amended complaint.

Our position is bolstered further when the first and third amended complaints are compared against the disclosures that occurred in 2014. The third amended complaint includes extensive new allegations in support of the contention that AIG acted knowingly,[31] and none of that information can be found in any of the disclosures in 2014. Moreover, the information in the 2014 disclosures about ALICO's unlicensed insurance activity in New York was essentially the same as what had been alleged in the first amended complaint.[32] This is not surprising given that the investigations that resulted in the disclosures were launched as the result of information provided by Mr. Grabcheski. And although the 2014 disclosures did include some new information (about MetLife, about ALICO and DELAM's activities after they were sold to MetLife, about the request for an advisory opinion from the New York Department of Insurance, and about AIG's attempt to have the licensing statute amended), that information is not necessary to the sufficiency of Mr. Grabcheski's claim. At worst, that information should be excluded from consideration in determining the claim's sufficiency.

\* \* \*

For the reasons above, the claims here were not "based upon the public disclosure of allegations or transactions" in one of the sources specified in § 3730(e)(4). Whether or not Mr. Grabcheski qualifies as an original source is therefore irrelevant.

---

28. 968 F. Supp. 2d 978 (S.D. Ill. 2013).

29. No. 07-cv-461, 2014 WL 2766115 (W.D. Penn. June 18, 2014).

30. *Education Management*, 2014 WL 2766115, at \*2; *Garbe*, 968 F. Supp. 2d at 990.

31. Third Am. Compl. ¶¶ 104–26, 150–54.

32. *Compare* ECF No. 40-1 at 7–9 (ECF pages 8–10), ECF No. 40-2 at 7–9 (ECF pages 8–10), and ECF No. 40-3 at ECF pages 14–18 *with* First Am. Compl. ¶¶ 70–90 (ECF No. 6).

**2. In any event, Mr. Grabcheski *was* an original source.**

Even if the original-source issue were relevant here, the ultimate conclusion would still be that the Court has jurisdiction, because Mr. Grabcheski was in fact an original source. Under the applicable version of § 3730(e)(4), an "original source" is someone who "has direct and independent knowledge of the information on which the allegations are based" and who "has voluntarily provided the information to the Government before filing an action under this section which is based on the information." Both of those requirements are satisfied here.

*a. Even though he was not required to do so, Mr. Grabcheski disclosed his allegations to the government before commencing this action.*

**(1)** AIG's letter begins with its argument that Mr. Grabcheski failed to disclose his allegations about ALICO to the government before commencing this action. But that argument's factual premise is mistaken: Mr. Grabcheski did make such a disclosure. On March 26, 2010—a month and a half before the original complaint was filed—Mr. Grabcheski's counsel provided the United States Attorney's Office with a copy of a draft disclosure statement that summarized Mr. Grabcheski's allegations regarding ALICO.[33] This document conclusively refutes AIG's argument that there was no precommencement disclosure.

(Although we have not previously submitted or referred to this disclosure, that failure was unintentional, as it resulted from the failure by one of Mr. Grabcheski's counsel to have located the transmittal email until the day that this response was due.[34] We apologize for not having located the email previously, but as the saying goes, better late than never.)

**(2)** Even if the allegations regarding ALICO had not been disclosed to the government before this action was filed, § 3730(e)(4)(B)'s disclosure requirement would be satisfied by the fact that before claims regarding ALICO and AIA were initially asserted in the first amended complaint, a draft of that complaint was provided to the government.

AIG's argument to the contrary is based on a misinterpretation of the statute. As noted above, one of the conditions of original-source status is "voluntarily provid[ing] the information to the Government before filing an action under this section which is based on the information." According to AIG, the key language is the phrase "before filing an action[.]" But that is incorrect. What the statute requires is not simply providing the information to the government "before filing an action," but providing the information "before filing an action…*which is based on the information*" (emphasis added).

That language is crucial because when this action was commenced, it did not include the claims regarding ALICO and AIA. As a result, the action was not originally one that was "based

---

33. Supp. Decl. of Max Maccoby ¶¶ 13–15 & Ex. 2 (to be submitted pursuant to motion for leave to file).

34. *Id.* ¶¶ 16–17.

on" the information regarding ALICO and AIA. It did not become such an action until the first amended complaint was filed in July 2011, and it is undisputed that Mr. Grabcheski disclosed his allegations to the government before that date.[35]

None of AIG's cases requires a different conclusion. In the two FCA cases AIG cites, the facts necessary for jurisdiction were lacking from the moment the original complaint was filed—a defect was not capable of being cured by any subsequent action by the plaintiff.[36] But as we have shown, this Court had jurisdiction over the original complaint and subsequently acquired jurisdiction over the present claim when it was asserted in the first amended complaint.

The Second Circuit case AIG relies on, *Gerber v. MTC Electronic Technologies Co.*,[37] is inapposite because it did not involve a situation in which the supposed basis for challenging jurisdiction arose only after the complaint was amended. The statute there specified that certain provisions "shall not affect or apply to any private action [brought under the Securities and Exchange Act of 1934] commenced before and pending on" the statute's date.[38] The case before the court was a securities case from the outset, and the complaint was subsequently amended only to add additional plaintiffs.[39] The court's decision would presumably have been different if the original complaint had asserted only state-law claims and the federal securities claim had been added by amendment after the statute's effective date.

Finally, one of the cases AIG relies on noted that "the FCA is based on the model of a single-count complaint, and it sometimes uses the term 'action' when it likely means 'claim.'"[40] In the context before the court in that case (in which the public-disclosure and first-to-file bars applied to the original complaint), it made sense to ignore any amended pleadings that were filed later: "If Branch's action was barred under either of these provisions at the time the original complaint was filed, the Court must dismiss the case, notwithstanding any amendments."[41] But here

---

35. Decl. of Max Maccoby in Support of Mtn. for Leave to Amend ¶ 50 (ECF No. 53); Supp. Decl. of Max Maccoby ¶ 24 & Ex. 3, 4 (to be submitted pursuant to motion for leave to file).

36. Both decisions noted that subsequent events cannot support jurisdiction if the necessary jurisdictional facts were not present when the action was commenced, whereas a failure to adequately *plead* jurisdictional facts be cured as long as the facts existed when the action was commenced. *Moore*, 2015 WL 1358034, at *14; *Branch Consultants, LLC*, 782 F. Supp. 2d at 260.

37. 329 F.3d 297, 309 (2d Cir. 2003).

38. *See Gerber*, 329 F.3d at 309–10 (citing Pub. L. No. 104–67, § 108, 109 Stat. 737, 758 (1995), *codified at* 15 U.S.C. § 77*l*).

39. 329 F.3d at 300–01.

40. *Branch Consultants, L.L.C.*, 782 F. Supp. 2d at 260 (citing *United States ex rel. Merena v. SmithKline Beecham Corp.*, 205 F.3d 97, 101–02 (3d Cir. 2000).

41. *Id.*

it would make no sense to require disclosure before the action was commenced, because the case was not originally "an action…*which is based on* the information" at issue.

### b. The source of the allegations regarding ALICO was Mr. Grabcheski, not his counsel.

At the hearing on the pending motions, AIG's counsel argued (based on sheer speculation) that Mr. Grabcheski "must have gotten" the theory of his current claim from the United States Attorney's Office.[42] Near the end of the hearing, undersigned counsel responded to that assertion, stating, "[T]he idea of the claim that we brought was an idea from Mr. Grabcheski's counsel. So it was not a suggestion by the U.S. Attorney's Office."[43] In its post-hearing letter, AIG seizes on that statement as evidence that Mr. Grabcheski "did not have personal knowledge of an essential component of what he claims was AIG's fraud on the Federal Reserve: that ALICO's and GMD's conduct violated New York insurance licensing law."[44] But AIG's inference is unjustified, for it is based on a misunderstanding of what Mr. Grabcheski's counsel meant.

When undersigned counsel referred to "the idea of the claim that we brought[,]" he was referring, not to the fact that ALICO had engaged in unlicensed insurance activity in New York, but rather to the idea that ALICO's unlicensed insurance activity could provide the basis for a claim under the False Claims Act.[45] While AIG's misinterpretation of counsel's statement is understandable, given that the statement was not as clear as it could have been, the fact is that once the statement is properly understood, AIG's argument collapses. Nothing in the False Claims Act suggests that in order to qualify as an original source, the relator must have realized that the facts he knew about could give rise to an FCA claim.

To underscore the fact that Mr. Grabcheski had personal knowledge as to ALICO's unlicensed insurance activities—including the fact that ALICO was unlicensed in New York and was therefore violating New York law—we are submitting a supplemental declaration in which Mr. Grabcheski provides further details about what he learned while he was employed at AIG and how he learned it. And as evidence corroborating what Mr. Grabcheski says, the declaration quotes from an audio recording made by Mr. Grabcheski of a conference call he had in 2008 or 2009 with the head and deputy head of ALICO's human relations-department.[46] The call was part of the planning process for moving GMD employees to DELAM in anticipation of AIG selling

---

42. Tr. of Mtn. Hrg. 9:9–11.

43. *Id.* at 107:25–108:3.

44. AIG Letter 3.

45. Decl. of Neal Goldfarb ¶¶ 5–10 (to be submitted pursuant to motion for leave to file).

46. Grabcheski Supp. Decl. ¶¶ 41–46. *See also id.* Ex.1 (transcript of recording). We will provide a copy of the audio file to the Court and to AIG.

ALICO to a new owner. During the conversation, Mr. Grabcheski and the ALICO human-relations head talk about "the New York problem," which (as Mr. Grabcheski explains in his declaration), refers to the fact that ALICO was not licensed in New York and that as a result GMD personnel based in New York could not be assigned to the ALICO payroll.

The declaration also recounts Mr. Grabcheski's efforts to obtain corrective action while he was still employed by AIG. Most importantly, on the day before his employment at AIG ended, Mr. Grabcheski sent a letter to Anastasia Kelly, who was at that time one of AIG's Vice Chairmen and also its chief compliance officer.[47] In the letter, he told Ms. Kelly that he had "become increasingly concerned about a number of practices within the company which would seem not only to be questionable from a policy perspective but also would expose the company to undue enterprise and regulatory risk." One of those concerns, he said, was that "[T]here are a number of compliance and legal issues surrounding ALICO and AIA which call into question both their valuation and current operating status." Although the letter did not provide details about those issues, Mr. Grabcheski provided those details later, when he was interviewed about his allegations by two lawyers representing AIG.[48] (AIG's current counsel may not have known about that interview at the time of the hearing; if he had been aware of it, he presumably would not now argue that Mr. Grabcheski lacked personal knowledge of the facts underlying his allegations.)

As if Mr. Grabcheski's declaration were not enough to refute AIG's argument on this score, we are also submitting declarations by Mr. Grabcheski's counsel. As counsel state in those declarations, that they had no knowledge about ALICO's illegal conduct other than what they learned from Mr. Grabcheski.[49] In short, AIG's misinterpretation of undersigned counsel's statement at the hearing has led it to make an argument that is utterly unfounded.

One final point on this issue. AIG asks that if leave to amend is granted, it be allowed to take jurisdictional discovery on the question of "what Relator knew and what his counsel supplied him[.]"[50] In view of the declarations we are submitting, such discovery is unnecessary. But if the Court does permit AIG to take discovery on the issue, it should also permit Mr. Grabcheski

---

47. *Id.* ¶¶ 48–51 & Ex. 2.

48. *Id.* ¶¶ 52–55.

49. In order to avoid any risk that the submission of these declarations would violate the ethical rules on lawyers acting as witnesses, we are separately moving for leave to file the declarations. *See* N.Y. RPC 3.7(a)(5) (permitting lawyer to act as both advocate and witness if authorized by the tribunal).

50. AIG Letter 4. The privilege issue that AIG raises need not be resolved at this time. Nevertheless, it is worth noting that although our disclosure of information that would otherwise be privileged obviously waives the privilege as to that specific information, the scope of any waiver beyond that would be narrow. Under Fed. R. Ev. 502(a)(3), any such waiver would extend to other communications or information only if "they ought in fairness to be considered together."

to take discovery seeking any documents or other materials memorializing what Mr. Grabcheski told AIG's lawyers when they interviewed him in the summer of 2009. Such documents could provide evidence as to the state of Mr. Grabcheski's knowledge at that time.

### 3. If the Court concludes that the third amended complaint does not state a claim, it should permit Mr. Grabcheski to amend again one final time.

Contrary to what AIG contends, we did not "abandon" the third amended complaint at the July 22 hearing. Rather, we made it clear that the third amended complaint's allegations were sufficient to state a claim and that Rule 12 did not require us to provide detail at the level that the Court was asking for in its questions.[51] Nevertheless, we said that in view of the Court's interest in hearing such details, "a better way to present that than [counsel] making proffers in court would be to allow us another chance to amend."[52] We went on to say, "[A]t that point we certainly understand the Court's concerns and have a very specific target to be aiming for."[53]

AIG is also inaccurate in arguing that we have failed *repeatedly* to cure deficiencies in our claim. AIG's motion to dismiss the second amended complaint was the first time that the sufficiency of Mr. Grabcheski's claim was challenged, and since that motion we have submitted only one amended complaint. If the third amended complaint is held not to state a claim, there would be only a single failure to cure.

For a preview of what would be alleged if we were given leave to further amend, the Court can look to Mr. Grabcheski's supplemental declaration, which gives precisely the kind of detail that the Court was asking for at the hearing. Furthermore, the declaration does not purport to set out all the relevant information Mr. Grabcheski is aware of, and a new amended complaint would go beyond even the extraordinary amount of information in the declaration.

Finally, there is no basis for concluding that we have acted in bad faith. We have submitted only one amended complaint after AIG moved filed its motion to dismiss, and we believe in good faith that the third amended complaint's allegations are sufficient to state a claim. Even if the Court disagrees, our belief was a reasonable one.

Thus, if the Court does not grant leave to file the third amended complaint, it should permit us to amend one more time, without prejudice to AIG's right to challenge the sufficiency of that complaint.

---

51. *E.g.*, Tr. of Mtn. Hrg. 78, 80–81.

52. Tr. of Mtn. Hrg. 91:10–12.

53. *Id.* at 91:23–24.

Respectfully yours,

/s/ *Neal Goldfarb*

Neal Goldfarb

*Attorney for Plaintiff/Relator*

cc:     All counsel of record (via ECF)