UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
UNITED STATES OF AMERICA, *ex rel.*
ALEX GRABCHESKI,

                           Plaintiff,

              -against-

AMERICAN INTERNATIONAL GROUP, INC.,

                          Defendant.
------------------------------------- x

ORDER

10 Civ. 03902 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff-relator Alex Grabcheski brings this *qui tam* suit under the False Claims Act ("FCA") against Defendant American Insurance Group, Inc. ("AIG") alleging that AIG violated the FCA by making misrepresentations to the Federal Reserve Bank of New York ("FRBNY") in connection with two debt repurchase agreements ("DRAs") entered into at the height of the financial crisis. (*See* Third Am. Compl. ("TAC") ¶¶ 1–2, 26–27, ECF No. 41-1.) Relator has now amended his complaint twice. Pending before this Court is Relator's Motion for Leave to File a Third Amended Complaint.

I.     **BACKGROUND**

AIG is a major insurance corporation. (*See* TAC ¶ 9.) American Life Insurance Co., Inc. ("ALICO") and American International Assurance Limited ("AIA") were AIG subsidiaries. (TAC ¶ 27.) During the financial crisis, the FRBNY extended financial assistance to AIG by providing AIG with a $60 billion revolving credit facility. (TAC ¶ 26.) In June 2009, AIG and FRBNY agreed to reduce AIG's debt by $25 billion in exchange for ownership interests in ALICO and AIG. (*See* TAC ¶ 27.)

-2-

That month, the FRBNY and AIG entered into two agreements—one with respect to ALICO and one with respect to AIA. (TAC ¶ 27.) Under the DRAs, AIG transferred its ownership of ALICO and AIA to newly created limited liability companies in which both AIG and the FRBNY held interests. (*See* TAC ¶¶ 27–28.) The FRBNY obtained equity in each LLC, with the right to receive the first $9 billion and $16 billion, respectively, upon liquidation of the ALICO- and AIA-related LLCs. (TAC ¶ 28.) AIG stated in its security filings that the fair value of the equity that the FRBNY obtained in the LLCs was $24.4 billion as of December 1, 2009. (TAC ¶ 40(a).) In exchange, the FRBNY reduced AIG's obligation under the $60 billion credit facility by $25 billion. (TAC ¶ 27.)

The DRAs contained representations and warranties made by AIG to the FRBNY. (TAC ¶ 29.) Among these were representations that, to AIG's knowledge, ALICO and AIA had all material licenses and were in compliance with all material laws, had fairly represented financial results, and had timely filed certain tax returns. (TAC ¶ 29.) The Third Amended Complaint alleges that these representations were false because ALICO and AIA engaged in unlicensed domestic insurance business that was unlawful under the state laws and failed to pay federal and state income taxes on income from that business. (*See* TAC at ¶ 149.)

Relator was hired by AIG in 1996. (TAC ¶ 10.) In 2007, he became Worldwide Director of Human Resources for the Group Management Division ("GMD"), an unincorporated organizational unit within AIG that carried out ALICO and AIA's U.S. insurance activities. (TAC ¶¶ 11, 68.) AIG terminated Relator in March 2009. (TAC ¶ 14.) AIA was not licenced to engage in insurance business anywhere in the United States; ALICO was only licenced to engage in insurance business in Delaware. (TAC ¶ 67.) GMD marketed and solicited insurance business on ALICO and AIA's behalf in New York, Illinois, California, Colorado, "and other

U.S. jurisdictions." (TAC ¶ 68.) Acting on behalf of ALICO and AIA, GMD's sales force in New York sold insurance products to multinational corporations. (TAC ¶¶ 72–76.) Most of the insurance sold covered insureds and risks located outside the United States, but "in some instances" GMD sold insurance that covered insureds or risks within the United States. (TAC ¶ 78.) The TAC alleges that "in addition to engaging in insurance business on behalf of ALICO and AIA in New York, GMD engaged in similar insurance business on behalf of ALICO and AIA elsewhere in the United States, including Illinois, California, North Carolina, and Colorado." (TAC ¶ 84.)

The TAC alleges "[u]pon information and belief" that AIG knew that its representations and warranties were false when it executed the DRAs. (TAC ¶ 150.) The TAC alleges that "Relator was present at meetings attended by senior AIG officers, in which these matters were discussed, and otherwise has knowledge of the senior AIG officers having been informed of these matters." (TAC ¶ 151.) The TAC alleges that at least four senior AIG officials knew about the representations and warranties that AIG had made when the DRAs were executed. (TAC ¶ 154.)

Count I of the TAC alleges that AIG's misrepresentations regarding AIA violated 31 U.S.C. § 3729(a)(7).[1] (TAC ¶¶ 189–90.) Count II alleges that AIG's misrepresentations regarding ALICO violated 31 U.S.C. § 3729(a)(7). (TAC ¶¶ 191–92.) Such claims are known

---

[1] In 2009, 31 U.S.C. § 3729(a)(7) was amended and reclassified as 31 U.S.C. § 3729(a)(1)(G). Section 3729(a)(1)(G) provides that "any person who . . . . knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government" is liable under the FCA. 31 U.S.C. § 3729(a)(1)(G). Therefore, this Court reads the Third Amended Complaint as alleging violations of 31 U.S.C. § 3729(a)(1)(G).

as "reverse false claims." *See U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 327 (S.D.N.Y. 2004).

## II. PROCEDURAL HISTORY

Relator filed this action on May 12, 2010. (*See* ECF No. 1.) Relator filed the Second Amended Complaint four years later, on May 13, 2014. (*See* Second Am. Compl. ("SAC"), ECF No. 16.) The United States has declined to intervene in this suit. (*See* Notice of Election to Decline Intervention, ECF No. 15.) Defendant filed a motion to dismiss the Second Amended Complaint on December 22, 2014. (Mot. to Dismiss, ECF No. 29.) Relator responded to Defendant's motion to dismiss by filing a Motion for Leave to File a Third Amended Complaint. (*See* Mot. for Leave to File Third Am. Compl., ECF No. 39.) On July 22, 2015, this Court held oral argument on AIG's Motion to Dismiss the Second Amended Complaint and Relator's Motion for Leave to File a Third Amended Complaint. In an order dated July 23, 2015, this Court held that the Plaintiff's motion to file a Third Amended Complaint had rendered Defendant's Motion to Dismiss the Second Amended Complaint moot. (Order, July 23, 2015, ECF No. 64; *see also* July 22, 2015 Oral Argument Tr. at 2:16–2:18.)[2]

## III. LEGAL STANDARDS

### A. Motion for Leave to Amend Under 15(a)(2)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A request to replead should be denied, however, "in the event that amendment would be futile." *Brinn v. Syosset Pub. Library*, 624 F. App'x 47, 48 (2d Cir. 2015) (quoting *Absolute Activist Value Master Fund*

---

[2] At oral argument, Relator's counsel told this Court: "I don't have anything additional to say about the second amended complaint that wouldn't apply to the third. So I think if we lose on the third we're certainly not going to win on the second." (July 22, 2015 Oral Argument Tr. at 2:25–3:04.)

-4-

*Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012)). "An amendment . . . is futile if the proposed claim could not withstand a motion to dismiss [under Rule 12(b)(6)] . . . ." *Id.* at 48–49 (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

In ruling on a motion to dismiss for failure to state a claim, a court "accept[s] all factual allegations in the complaint as true . . . and draw[s] all reasonable inferences" in favor of the plaintiffs. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008)). A court is "not, however, 'bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman,* 517 F.3d 140, 149 (2d Cir. 2008)). In order to survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court deciding a motion for failure to state a claim is not limited to the face of the complaint. A court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns v. Shaar Fund. Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

### B. Heightened Pleading Standard Under Rule 9(b)

Claims brought under the FCA are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See, e.g., Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d

Cir. 1995). That rule requires that the circumstances constituting fraud be alleged with particularity, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy Rule 9(b)'s pleading requirements, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Wood ex rel. U.S. v. Applied Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). The Second Circuit has cautioned that "while Rule 9(b) permits scienter to be demonstrated by inference, this must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.* (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991)). Instead, the Second Circuit has "repeatedly required plaintiffs to plead the factual basis which gives rise to a strong inference of fraudulent intent." *Id.*

## IV. PLAINTIFF'S ALLEGATIONS FAIL TO STATE A CLAIM

A relator bringing a reverse false claim under 31 U.S.C. § 3729(a)(1)(G) must allege that the defendant "(1) made a false statement or created and used a false record, (2) with knowledge of its falsity, (3) for the purpose of decreasing, concealing, or avoiding an obligation to pay the Government." *U.S. ex rel. Doe v. Taconic Hills Cent. Sch. Dist.*, 8 F. Supp. 3d 339, 346 (S.D.N.Y. 2014) (quoting *Gabelli*, 345 F. Supp. 2d at 327).

### A. Relator Fails to Plead a False Statement with Sufficient Particularity.

The Third Amended Complaint falls far short of meeting Rule 9(b)'s heightened pleading requirements. *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 301 (S.D.N.Y. 2013) (quoting *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04 Civ. 00704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009)) ("Rule 9(b) requires that a plaintiff set forth the who,

what, when, where and how of the alleged fraud."). Relator must plausibly allege that the representations and warranties made by AIG were false. He has not done so.

Relator fails to allege a single instance of an unlicensed insurance business. With regard to the allegations of violations of California, Colorado, Illinois, and North Carolina law, Relator relies on extensive recitations of state insurance laws and perfunctory allegations of liability. (*Cf., e.g.*, TAC ¶¶ 61–65 (quoting California, Colorado, Illinois and North Carolina statutes at great length), *with* TAC ¶ 84 (alleging conclusorily that "GMD engaged in similar insurance business on behalf of ALICO and AIA elsewhere in the United States, including Illinois, California, North Carolina, and Colorado.").) These conclusory allegations are clearly insufficient.

Relator's most substantial allegations relate to the purported activities of GMD employees in New York acting on behalf of ALICO and AIA. (*See* TAC ¶¶ 68–83.)[3] But even with regard to these allegations, Relator has not pleaded even one insurance business transaction that was illegal under relevant law. Instead, Relator makes general assertions about the nature of GMD's activities. (*See, e.g.*, TAC ¶ 82 ("For the most part . . . those personnel had no such

---

[3] The Third Amended Complaint relies extensively on consent orders obtained by the New York State Department of Financial Services against ALICO and AIG in March and October 2014. (*See* TAC ¶¶ 176–186; *see also* Maccoby Decl., Exs. 1–2, March 28, 2014 and October 31, 2014 NYDFS Consent Orders, ECF Nos. 40-1 and 40-2.) Relator cannot rely on these consent orders to plead with particularity the underlying facts of his allegations. *See, e.g., In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) ("Although the CFTC Order included certain factual findings, it nevertheless was the product of a settlement between the CFTC and the Respondents, not an adjudication of the underlying issues in the CFTC proceeding. Plaintiffs are therefore prohibited from relying on the CFTC Order to plead the underlying facts of liability." (internal quotation marks omitted)).

[New York] licenses.").) Relator fails to plead that AIG made a false statement in connection with the DRAs.

**B.    The Third Amended Complaint Fails to Plead that AIG Acted Knowingly.**

Under the FCA, "knowingly" means that a person had (i) "actual knowledge," (ii) "deliberate ignorance," or (iii) "reckless disregard for the truth or falsity of the information." 31 U.S.C § 3729(b)(1). The Third Amended Complaint names ten AIG senior officials who purportedly knew of ALICO and AIA's illegal conduct. (*See* TAC ¶ 153.) Six of these individuals left AIG long before AIG entered into the DRAs with the FRBNY. These are: (1) Maurice Greenberg, who resigned in 2005 (TAC ¶ 153(a)), (2) R. Kendall Needham, who retired in 2007 (TAC ¶ 153(c)), (3) Howard Smith, who was affiliated with AIG "until sometime in 2005" (TAC ¶ 153(d)), (4) Nicholas O'Kulich, who retired in 2004 (TAC ¶ 153(e)), (5) Edmund Tse, who left AIG "sometime in 2008," (TAC ¶ 153(i)), and (6) Joyce Phillips, who left AIG in October 2008 (TAC ¶ 153(j)). Beyond conclusory allegations, Relator has failed to allege that three of the remaining four individuals—Chris Swift, Rodney Martin, and David Herzog—were involved with the negotiation or execution of the DRAs or knew of the representations made therein. (*See* TAC ¶¶ 154–55.) And Relator has failed to make any allegation, beyond information and belief, that Paula Reynolds, who executed the DRAs on behalf of AIG, (TAC ¶ 31), had any knowledge of AIG's purported false statements regarding AIG's certifications about ALICO and AIA's compliance with licensing requirements and

material laws in New York or any other state. Relator has failed to plead that AIG acted knowingly.

### C. The Third Amended Complaint Fails to Allege that the Purported Misrepresentations Were Material.

Section 3729(a)(1)(G) applies only to a "false record or statement *material* to an obligation to pay or transmit money or property to the Government . . . ." 31 U.S.C. § 3729(a)(1)(G) (emphasis added). In determining whether a false statement is material under that provision, "the inquiry focuses on *the potential effect* of the false statement when it is made, not on the actual effect of the false statement when it is discovered." *U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1204 (10th Cir. 2006) (quoting *U.S. ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Grp., Inc.*, 400 F.3d 428, 445 (6th Cir. 2005)) (analyzing previous iteration of the statute).

Relator alleges that, were it not for AIG's purported false statements, ALICO and AIA's valuations "would have been at least $100 million less." (TAC ¶ 167.) According to the allegations in the Third Amended Complaint, however, the FRBNY reduced AIG's debt by $25 billion in exchange for $24.4 billion in equity. (*See* TAC ¶¶ 2, 40(a).) Nothing in the Third Amended Complaint supports the conclusion that any purported overvaluation of ALICO and AIA was material to the FRBNY, and would have precluded the $25 billion debt reduction. Plaintiff has therefore failed to plead materiality under Section 3729(a)(1)(G). [4]

---

[4] AIG also argues that this Court lacks subject matter jurisdiction over this action. At the time this action was filed, the FCA provided that "[n]o court shall have jurisdiction over an action under [the FCA] based upon the public disclosure of allegations or transactions . . . , unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A) (2006). This provision was amended in 2010 to longer be a jurisdictional bar going forward. Information suffices as a public disclosure when it "could have formed the basis for a governmental decision or prosecution, or could at least have alerted law-enforcement authorities to the likelihood of wrongdoing." *U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). To qualify as an "original source," a *qui tam* plaintiff must

## V. PLAINTIFF'S REQUEST FOR LEAVE TO FILE A FOURTH AMENDED COMPLAINT IS DENIED

In an August 18, 2015 letter, Plaintiff argues that "[i]f the Court concludes that the third amended complaint does not state a claim, it should permit Mr. Grabcheski to amend again one final time." (Letter from Neal Goldfarb dated Aug.18, 2015 at 13, ECF No. 73.) That is, Plaintiff seeks leave to file a fourth amended complaint even before receiving leave to file his third. In support of his request, Plaintiff seeks to file a supplemental declaration by Relator that serves as a "preview of what would be alleged if [Relator] were given leave to further amend . . . ." (*Id.*) The allegations in Relator's supplemental declaration relate to his knowledge of ALICO's conduct and relate to his argument about this Court's subject matter jurisdiction. (*See* Supplemental Decl. of Alex Grabcheski, ECF No. 76-1.) But Relator has failed to plead that AIG knowingly made false representations regarding its compliance with material license

---

have "(1) had direct and independent knowledge of the information on which the allegations are based, (2) voluntarily provided such information to the government prior to filing suit, and (3) directly or indirectly been a source to the entity that publicly disclosed the allegations on which the suit is based." *United States v. New York Med. Coll.*, 252 F.3d 118, 120 (2d Cir. 2001) (citing 31 U.S.C. § 3730(e)(4)(B)).

Defendant argues that this action must be dismissed because the key elements of the fraud alleged in the complaint were publicly disclosed before Relator filed this action, and Relator is not an original source. Defendant has pointed to AIG press releases that were sufficient to alert law-enforcement authorities to the likelihood of wrongdoing on the theory that Relator has articulated. (*See, e.g.*, Carlinsky Decl., Ex. I, March 25, 2008 AIG Press Release, ECF No. 31-9.) The March 25, 2008 AIG press release, for example, stated that GMD, an AIG division "[h]eadquartered in New York," offered insurance products through a number of subsidiaries, including AIA and ALICO. (*Id.*) Relator has sought to rebut Defendant's argument through the submission of additional declarations that are inconsistent with his prior allegations. (*Cf.* Supplemental Decl. of Max Maccoby at ¶ 13 (alleging Relator's counsel made disclosure to U.S. Attorney on March 26, 2010, several weeks before commencing this action), ECF No. 74-2, *with* (Pl.'s Reply Mem. in Supp. of Mot. for Leave to File Third Am. Compl. at 3, ECF No. 51 ("[T]he disclosure here took place after this action was commenced . . . .").) Relator's allegations do not demonstrate that he was in fact the source of the information on which this suit is based.

requirements and materials laws. Relator's request for leave to amend is therefore DENIED as futile.

## VII. CONCLUSION

Relator's Motion for Leave to File a Third Amended Complaint is DENIED. Relator's Third Amended Complaint is DISMISSED with prejudice for failure to state a claim. Relator's Motion for Leave to File Attorney Declarations is GRANTED. Defendant's Motion to Strike or for an Award of Costs is DENIED.

The Clerk of Court is directed to close the motions at ECF Nos. 39, 74, and 77.

Dated: March 31, 2016
      New York, New York

SO ORDERED.

*George B. Daniel*

GEORGE B. DANIELS
United States District Judge